**MISSOURI–KANSAS–TEXAS RAILROAD COMPANY, Appellant,**

v.

**Grace PIERCE et al., Appellees.**

**No. 12191.**

Court of Civil Appeals of Texas, Austin.

Jan. 8, 1975.

Rehearing Denied Jan. 29, 1975.

Supplemental Opinion Feb. 13, 1975.

Dan Moody, Jr., H. Lee Godfrey, Graves, Dougherty, Hearon, Moody & Garwood, Austin, for appellant.

Bob Roberts, Byrd, Davis, Eisenberg & Clark, Austin, for appellees.

SHANNON, Justice.

This appeal stems from a suit filed in the district court of Hays County by appellee, Grace Pierce, and others, against ap-

pellant, Missouri-Kansas-Texas Railroad Company. Upon trial to a jury, the court entered judgment for $25,000.00 in favor of appellee for the wrongful death of her adult son, Jack Shaw.

The cause of action arose from a collision between an automobile and a railroad brush-cutter at a railroad crossing near Gary Job Corps in Hays County on January 11, 1972. At that time Jack Shaw was a passenger in the automobile, and he died as a result of that collision.

The case was tried to a jury. In response to special issue number fifteen, the jury answered that $25,000.00 would compensate appellee for her pecuniary loss resulting from the death of her son. Judgment was entered for appellee in that sum.

In its amended motion for new trial, appellant suggested that the denial of its motion for new trial be conditioned on the filing by appellee of a remittitur in the sum of $14,000.00. The court overruled appellant's amended motion for new trial and its suggestion of remittitur.

Appellant complains that the trial court erred in refusing to disregard the jury's answer to special issue number fifteen for the reason that it was supported by no evidence, or alternatively, that such answer was so against the overwhelming weight and preponderance of the evidence so as to be clearly wrong. By its fifth point of error, appellant also attacks the trial court's refusal to grant its suggestion of remittitur.

■■ Under Texas Rules of Civil Procedure, rule 440, a court of civil appeals, if the court is of the opinion that the verdict and judgment of the trial court is excessive, may suggest remittitur of the excess, and if remittitur is not filed, the appellate court may reverse the trial court's judgment. The court of civil appeals is required to exercise its sound judicial judgment and discretion in the ascertainment of what amount would be reasonable compensation for the injury sustained, and

treat the balance as excess. Wilson v. Freeman, 108 Tex. 121, 185 S.W. 993 (1916). In determining whether the verdict of the jury was excessive, the court of civil appeals must first arrive at a conclusion, after a review of the evidence, as to what sum would be held to be reasonable if it had been assessed by the jury. Texas and New Orleans Railroad Co. v. Syfan, 91 Tex. 562, 44 S.W. 1064 (1898); Atchison, Topeka & Santa Fe Railway Company v. Ham, 454 S.W.2d 451 (Tex.Civ.App. 1970, writ ref'd n. r. e.).

■■ Relative to the excessiveness *vel non* of the verdict of the jury it is in order to observe that an adult has no legal obligation to contribute to the support of his parents, and the parents have no legal right to the services or earnings of an adult child. For the wrongful death of an adult child, the parent may recover the present value of such an amount that he can show that the child would have probably contributed to his support had the child lived. Francis v. Atchison, T. & S. F. Ry. Co., 113 Tex. 202, 253 S.W. 819 (1923).

■ At best, the deceased child's probable contributions to his parent can be shown only imperfectly. To that end the parent may show the character of the deceased and his affection and disposition toward his parent. In addition, the parent may show the deceased's past earnings, his probable future earning capacity, the proportion of his past earnings which he had contributed to the parent's support and maintenance, and the proportion of his future earnings that he would have probably contributed to the parent. The parent is also entitled to prove up his age, his state of health, life expectancy, and pecuniary condition and need of help and contributions from the deceased. Francis v. Atchison, T. & S. F. Ry. Co., *supra*.

An examination of the record shows that Jack Shaw was a "real jolly-type person." He was a widower and lived in Martindale within walking distance to appellee's house. Nine children had been born to appellee,

and at the time of his death, Shaw was the only one living. The deceased was attentive to his mother's needs, and he saw her each day. As appellee said, ". . . he would help his mama." For example, in former days appellee had "packed" wood from the gravel pit on the river for her wood heater. Shaw bought a gas heater for her and helped pay for some of her butane purchases. So that she could have indoor plumbing, Shaw dug a cesspool, and helped her finance the cost of installation of that plumbing. In response to a question of what other kind of help that her son gave her, appellee said, "Anything I got, anything he thought I need, anything I wanted he helped until he got killed. He'd buy food. Fed me when I didn't have it." In addition, appellee said that Shaw tended to all of her wants concerning the care of her house and her business problems.

Shaw worked at Camp Gary Job Corps. The record does not show his education, training, job experience, the character of his job, nor the amount of his earnings at the time of his death. The record does show that he was paid every two weeks, and that on payday he would give appellee from twenty to twenty-five dollars.

Appellee was seventy-five years of age at the time her son died. The record does not show the state of her health, nor her life expectancy. Her mother had been eighty-four at the time of her death. Though the record does not specifically show appellee's pecuniary condition at the time of her son's death, and her need of his help and contributions, appellee stated that she had ". . . come through some pretty hard things since Jack got killed because there's nobody but me . . ."

■ Appellant contends that the jury's finding of damages in the sum of $25,000.-00 is contrary to the overwhelming weight and preponderance of the evidence. We agree that the damages found were excessive.

The jury could have well concluded that appellee was of humble circumstances and that she would have stood in need of whatever help and contributions Shaw would have offered. Shaw did pay attention to his mother and did help her acquire some of the comforts which helped ease the burden of her years. In addition to his other services to her, Shaw made regular monetary contributions to his mother. The jury could have reasonably concluded that Shaw would have continued performing those services and making those contributions for the balance of appellee's lifetime. At the same time, there was no proof to indicate that the deceased's earnings were such or that his future earning capacity was such that he could have increased his monetary contributions to his mother even though he was so inclined.

The record is spare with respect to the number of years appellee might live and to the value of the deceased's services. Doubtless for reasons of advocacy, counsel for appellee chose not to introduce direct evidence bearing on life expectancy, such as life expectancy tables. The only evidence tending to show how long appellee might expect to live was that her mother had lived until she was eighty-four. Based upon that rather thin proof the jury could have concluded that appellee would live about nine years from the time of Shaw's death, and that his monetary contributions to her would have been about $5,850.00.

■ In fixing the pecuniary value of the loss of Shaw's services to appellee, the jury was not limited to a mathematical formula. In that determination the jury was authorized to estimate the value of those services based upon the evidence adduced. Rowan & Hope v. Valadez, 258 S.W.2d 395 (Tex.Civ.App.1953, writ ref'd n. r. e.). Though we appreciate the difficulties in making this kind of proof, the evidence concerning Shaw's services to his mother was not very detailed. Even so, we are convinced from the proof that the personal services which Shaw would have afforded

his mother were probably of a greater pecuniary value than that of his gifts of money. After a consideration of all of the evidence we have determined that the reasonable value of those services to be $10,000.00. If to this sum is added $5,850.00 for the monetary contributions which Shaw would have made to his mother if he had lived, a total of $15,850.00 is reached. Beyond this sum, we regard the verdict as excessive and not supported by the evidence.

Considering the evidence and the law relating to recoveries for wrongful death, this Court under Tex.R.Civ.P. 440, finds the judgment to be excessive and suggests a remittitur of $9,150.00.

If appellee files in this Court, within fifteen days from the date of this opinion and judgment, a remittitur of $9,150.00, the judgment of the trial court will be reformed and affirmed for the sum of $15,850.00. If remittitur is not so filed, the judgment will be reversed and remanded to the district court.

Affirmed subject to remittitur.

 Appellee, Grace Pierce, has filed a motion for rehearing, complaining, among other things, that the Court erred in considering the matter of excessiveness of the judgment as it was not properly raised by appellant's points of error. The points of error are listed in the opinion of the Court.

Because we are of the opinion that appellant's points of error and the discussion in its brief directed the Court's attention to the matter of excessiveness, we will overrule the motion for rehearing. Tex.R.Civ. P. 418(b), Bright v. State Department of Public Welfare, 481 S.W.2d 456 (Tex.Civ. App.1972, writ ref'd n. r. e.).

If appellee files in this Court, within fifteen days from the date of this opinion, a remittitur of $9,150.00, the judgment of the trial court will be reformed and affirmed for the sum of $15,850.00. If remittitur is not so filed, the judgment will

be reversed and remanded to the district court.

## SUPPLEMENTAL OPINION

Grace Pierce, appellee, filed a remittitur of $9,150.00 on February 13, 1975, in compliance with the suggestion of remittitur by this Court, in our opinion of January 29, 1975. The judgment of the trial court is reduced by the amount of such remittitur, and as so modified, the judgment of the trial court is affirmed.

Remittitur filed. Judgment modified and as modified, affirmed.