**Opinion filed October 28, 2010**



## In The

# Eleventh Court of Appeals

_____

## No. 11-08-00256-CV

_____

**RICHARD ELLIOTT AND WEST TEXAS CENTERS FOR MHMR,
Appellants**

**V.**

**GREGORY HOLLINGSHEAD, AS NEXT FRIEND AND GUARDIAN OF
THE PERSON OF KELCEY HOLLINGSHEAD, KLAYTON
HOLLINGSHEAD, AND KANYON HOLLINGSHEAD, MINORS, Appellee**

**On Appeal from the 32nd District Court**

**Nolan County, Texas**

**Trial Court Cause No. 18,701**

### O P I N I O N

This is a wrongful death and survival action arising from an automobile accident. Appellants, Richard Elliott and West Texas Centers for MHMR (MHMR), appeal from the trial court's judgment allocating settlement proceeds. We reverse the trial court's judgment and remand this cause to the trial court for further proceedings consistent with this opinion.

*Background*

On April 12, 2006, Stacey Hollingshead was driving her minivan in the westbound lanes of Interstate 20 while in the course and scope of her employment with MHMR. At the same time, Jose Rosales was driving an eighteen-wheeler in the eastbound lanes of Interstate 20. Rosales lost control of his truck, crossed the median of the highway, and entered the westbound lanes of the highway. At one point, Rosales's truck blocked the westbound lanes. Stacey's minivan struck Rosales's trailer and became lodged underneath it. Stacey was pronounced dead at the scene.

Stacey was survived by her minor children, Kelcey, Klayton, and Kanyon Hollingshead. Stacey had formerly been married to Gregory Hollingshead. Stacey and Gregory divorced prior to the accident. Stacey's employer, MHMR, is a self-insured governmental entity for workers' compensation purposes, and it is a member of the Texas Council Risk Management Fund, which is a risk management pool of political subdivisions. Following Stacey's death, the risk management fund began paying weekly workers' compensation death benefits to Stacey's children in the amount of $471.60 ($157.20 per child).

As a result of Stacey's death, appellee Gregory Hollingshead, individually and as next friend and guardian of the person of Kelcey Hollingshead, Klayton Hollingshead, and Kanyon Hollingshead, minors, filed a wrongful death suit against Rosales and two other defendants, Intermodal Cartage Co., Inc. and Flexi Van Leasing, Inc.[1] Elliott is an attorney, and he represented Hollingshead and the minor children in the wrongful death suit. In the wrongful death petition, Hollingshead alleged that, at the time of the accident, Rosales was acting in the course and scope of his employment with Intermodal and Flexi Van Leasing and in the furtherance of their business. Stacey's parents, Roy Long and Ernestine Long, intervened in the suit and asserted wrongful death claims against the defendants.[2] The law firm of Forbes & Forbes represented the Longs in connection with their intervention. Later, the law firm of Hall & Hall, L.L.P., joined the Forbes firm in the representation of the Longs. MHMR also intervened in the suit, seeking reimbursement for the workers' compensation benefits that had been paid to

---

[1]Hollingshead did not assert any claims in his individual capacity, and the trial court did not award him a recovery in that capacity. He has filed his appellate brief in the capacities of next friend and guardian of the person of Kelcey, Klayton, and Kanyon.

[2]The Longs have not filed an appellate brief.

Stacey's minor children. Michael J. Donovan of the law firm of Burns, Anderson, Jury, & Brenner, L.L.P., represented MHMR in connection with its intervention.

In an amended plea in intervention, the Longs added Mark George and Translead Hyundai as defendants. The Longs alleged that Intermodal and George were "alter-egos of each other" and, as such, were "jointly and severally liable for the damages alleged herein and liable for each other's liability." The Longs alleged that Hyundai had designed, engineered, manufactured, and marketed the trailer that was involved in the accident and that the trailer was defective. The Longs also added a survival action against the defendants. Hollingshead filed a plea in intervention in which he asserted claims against George and Hyundai, and MHMR amended its plea in intervention to assert claims against George and Hyundai.

Defendants Rosales, Intermodal, and George moved for summary judgment against Hollingshead, the Longs, and MHMR. MHMR did not respond to the motions for summary judgment, and its counsel did not appear at the hearing on the motions. The trial court entered orders granting summary judgment in favor of Rosales, Intermodal, and George against MHMR. The trial court denied summary judgment to Rosales, Intermodal, and George on Hollingshead's claims and the Longs' claims.

The Longs' counsel asserted that the summary judgments entered in favor of Rosales, Intermodal, and George against MHMR disposed of MHMR's claim for reimbursement of workers' compensation benefits that had been paid to the minor plaintiffs. MHMR filed a motion for order nunc pro tunc seeking clarification of the trial court's orders granting summary judgment to Rosales and Intermodal against it. The trial court granted MHMR's motion, rescinded its previous summary judgment order regarding Rosales and Intermodal's motion for summary judgment, and entered a new corrected order. In the new order, the trial court granted partial summary judgment to Rosales and Intermodal "as to Intervenor [MHMR] on the issues of gross negligence and standing as a statutory beneficiary under the Texas Survival Statute and Texas Wrongful Death Statute." This order made clear that the trial court had not granted summary judgment to Rosales and Intermodal on MHMR's claim for reimbursement of workers' compensation benefits that had been paid to Stacey's children.

Upon motion by the Longs, the trial court realigned them as plaintiffs. The trial court also appointed Burt L. Burnett as attorney ad litem for Stacey's children. Ultimately, Hollingshead and the Longs agreed to settle the claims against all defendants for a total of

$4,016,461.99. This total amount consisted of the following payments from the defendants: (1) $3,996,461.99 from Rosales, Intermodal, George, or their insurers; (2) $15,000 from Flexi Van or its insurer; and (3) $5,000 from Hyundai or its insurer.

On June 24, 2008, the trial court held a settlement hearing. We have reviewed the testimony from the hearing in its entirety. The evidence showed that $2,100,000 of the settlement proceeds had been used to fund annuities for the benefit of the minor plaintiffs.

At the hearing, MHMR sought reimbursement for benefits and funeral expenses it had paid totaling $59,377.40. The attorney ad litem and the Longs' counsel raised questions about Elliott's representation of the minor plaintiffs. After hearing the evidence and argument from counsel, the trial court approved the settlement. The trial court also approved the claims of the Forbes firm and the Hall firm for attorney's fees and costs. The trial court then stated:

> As to Mr. Elliott, I have some concerns as to the timing of some of the things that happened. I'm going to approve certainly the attorneys' fees with -- I guess a total amount of attorneys' fees and expenses of $616,766.50, with $200,000 of that to be interpled into the Court pending potential appeals that may take place.

The trial court also concluded that Elliott's actions had caused the attorney ad litem to incur additional attorney's fees. Therefore, the trial court found that $15,000 of Elliott's attorney's fees should be paid toward the attorney ad litem's total approved fee of $40,000.

On July 21, 2008, the trial court entered a judgment approving the settlement. In the judgment, the trial court ordered that the amount of $259,377.40 be paid into the registry of the court "to be disbursed on further order of the Court as it relates to any additional attorney's fees that may be owed Richard Elliott and any funds that may or may not be owed to the Intervenor, West Texas Center for MHMR." After the trial court entered the judgment, Hollingshead terminated Elliott's representation of him and the minor plaintiffs. Later, the Hall law firm began representation of Hollingshead and the minor plaintiffs, and that representation continues in this appeal. Elliott filed a plea in intervention seeking to recover his attorney's fees. Elliott and MHMR filed notices of appeal from the judgment. However, because the judgment did not dispose of all parties and claims, it was not a final, appealable judgment. Therefore, we did not have jurisdiction to entertain the appeal at that time. We abated the appeal to allow the trial court to render a final judgment disposing of all parties and claims.

On February 27, 2009, the trial court held another hearing. On March 20, 2009, the trial court entered a final judgment approving the settlement. The trial court included a number of findings in its judgment. The trial court allocated 75% of the settlement proceeds to the survival claims brought on behalf of Stacey's estate and 25% of the settlement proceeds to the wrongful death claims. Thus, of the $4,016,461.99 in settlement proceeds, the trial court allocated $3,012,346.50 to the survival claims and $1,004,115.50 to the wrongful death claims. Of the $3,996,461.99 in settlement proceeds paid by Rosales, Intermodal, George, or their insurers, the trial court (1) allocated $2,997,346.49 to the survival claims and $999,115.50 to the wrongful death claims and (2) allocated damages as to Rosales to be $1,000,000, as to Intermodal to be $1,000,000, and as to George to be $1,996,416.99.

The trial court found that MHMR had paid $59,377.40 in past workers' compensation benefits to the minor plaintiffs. The trial court found that MHMR was subrogated in the settlement proceeds for payment of past benefits in the amount of $39,584.93, which represented the amount it had paid in past benefits ($59,377.40) reduced by one-third ($19,792.47) for payment of fees to plaintiffs' attorneys. The trial court reduced the $39,584.93 amount by a pro rata share of expenses in the amount of $3,574.71 that it allocated to MHMR's claim for reimbursement of past benefits paid. Therefore, the trial court concluded that MHMR was entitled to payment from the minor plaintiffs on its subrogation claim for payment of past benefits in the amount of $36,010.22.

In determining MHMR's advance against future benefit payments, which is known as a "payment holiday," the trial court found that MHMR had no subrogation rights in the settlement proceeds that had been allocated to the survival claims ($3,012,346.50) and to the Longs' wrongful death claims ($353,523.42). The trial court stated that MHMR had subrogation rights "only in the net recovery by [the minor plaintiffs] for their wrongful death claims." The trial court found that "[t]he wrongful death proceeds to the minor Plaintiffs in this suit are $650,592.08, which represents the $1,004,115.50 paid to settle all wrongful death claims less $353,523.42 allocated to Roy Long's and Ernestine Long's individual wrongful death claims." Because summary judgment had been granted to George on MHMR's claims, the trial court found that MHMR had "no interest in any settlement proceeds allocated to or paid by Defendant Mark George." Therefore, the trial court reduced the $650,592.08 figure that it allocated to the minor plaintiffs' wrongful death claims by the percentage of settlement proceeds that it allocated

5

to George and arrived at a figure of $323,344.26. The trial court concluded that $323,344.26 was the net amount recovered by the minor plaintiffs on their wrongful death claims and was, therefore, "the total amount of settlement proceeds available to satisfy any possible or alleged subrogation claims and/or benefit payment holiday of Intervenor, MHMR."

In calculating MHMR's future payment holiday, the trial court reduced the $323,344.26 figure by $59,377.40, which represented the amount of past benefits paid, and by $19,583.89 in expenses that it allocated to MHMR's claim. Therefore, the trial court concluded that MHMR was entitled to a payment holiday of $244,382.97.

The trial court found that Elliott breached the fiduciary duties that he owed to the minor plaintiffs in representing them in this cause. Based on this finding, the trial court concluded that "[g]ood cause exists for the apportionment of the attorney *ad litem* fees in the amounts of $25,000.00 to be paid pro-rata by Defendants and $15,000.00 to be paid by Plaintiff's attorney Richard Elliott in light of the circumstances of this case and the conduct of the parties and their counsel." The trial court also found that "[g]ood cause exists to require $100,000 of the attorney's fees claimed by Richard Elliott to be paid to or for the benefit of the minor children."

The trial court ordered that the district clerk disburse the funds that had been held in the registry of the court by issuing (1) a check payable to "Richard Elliott" in the amount of $100,000, (2) a check payable to "Texas Council Risk Management Fund (MHMR)" in the amount of $36,010.22, and (3) a check payable to "The Estate of Stacey Hollingshead" in the amount of $143,460.55. The trial court ordered that the amount paid to the estate be used solely for the benefit of Stacey's minor heirs, who were the minor plaintiffs in this cause. The trial court awarded the attorney ad litem a total fee of $40,000, with $25,000 of the fee to be paid by the defendants on a proportionate share basis and $15,000 of the fee to be paid by Elliott.

*Issues on Appeal*

MHMR presents two issues for review. In its first issue, it contends that the trial court erred in allocating the settlement proceeds and calculating its credit against future benefit payments and that, therefore, the trial court's judgment impermissibly compromised its subrogation rights. In its second issue, it contends that the trial court erred in awarding attorney's fees to the plaintiffs' attorneys out of its recovery of $59,377.40 for past benefits paid.

Elliott presents three issues for review. In his first issue, he contends that the trial court violated his due process rights in ordering that $100,000 of his attorney's fees be forfeited to the

6

minor plaintiffs. In his second issue, he contends that the evidence was legally and factually insufficient to establish that he breached a fiduciary duty to the minor plaintiffs. In his third issue, he contends that the evidence was legally and factually insufficient to support the trial court's award and division of attorney ad litem fees.

<em>MHMR's Subrogation Rights</em>

A workers' compensation insurance carrier that has paid benefits to a legal beneficiary of an employee has a subrogation right in the legal beneficiary's claims against third parties. TEX. LAB. CODE ANN. §§ 417.001-.002 (Vernon 2006). The Workers' Compensation Act defines "legal beneficiary" as a person who is entitled to receive a death benefit under the Act. TEX. LAB. CODE ANN. § 401.011(29) (Vernon Supp. 2010). Self-insured governmental entities, such as MHMR, fall within the Act's definition of "insurance carrier." Section 401.011(27)(D).

Under Section 417.001(b) of the Act, an "insurance carrier is subrogated to the rights of the injured employee and may enforce the liability of the third party in the name of the injured employee or the legal beneficiary." Section 417.002(a) provides that "[t]he net amount recovered by a claimant in a third-party action shall be used to reimburse the insurance carrier for benefits, including medical benefits, that have been paid for the compensable injury." When a workers' compensation beneficiary settles a claim against a tortfeasor, the compensation carrier has a right of reimbursement from the first monies paid by the tortfeasor. *Tex. Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 35 (Tex. 2008). The insurance carrier's right to reduce its liability from a payment of a third party must not be compromised. *U.S. Fire Ins. Co. v. Hernandez*, 918 S.W.2d 576, 578 (Tex. App.—Corpus Christi 1996, writ denied); *Ins. Co. of N. Am. v. Wright*, 886 S.W.2d 337, 341 (Tex. App.—Houston [1st Dist.] 1994, writ denied). The carrier's right to reimbursement is mandatory, and until the carrier is reimbursed in full, a legal beneficiary has no right to any of the settlement funds. *Ledbetter*, 251 S.W.3d at 36. Any net recovery by a legal beneficiary in a third-party action that exceeds the amount of past benefits paid by the carrier "shall be treated as an advance against future benefits." Section 417.002(b). If an advance against future benefits "is adequate to cover all future benefits, the insurance carrier is not required to resume the payment of benefits." Section 417.002(c). However, "[i]f the advance is insufficient, the insurance carrier shall resume the payment of benefits when the advance is exhausted." *Id.*

7

The carrier has subrogation rights over the portion of an award or settlement in a third-party action that represents the interest of a workers' compensation beneficiary. *Hernandez*, 918 S.W.2d at 578; *Wright*, 886 S.W.2d at 341. The trial court may not enter a judgment that arbitrarily compromises the carrier's right to subrogation by structuring the award so that a non-beneficiary recovers, but a beneficiary does not. *Hernandez*, 918 S.W.2d at 579. When the allocation of settlement proceeds impacts a carrier's right of reimbursement, the trial court must allocate the proceeds based upon the relative merits and worth of the claims involved. *Id.* Trial courts cannot apportion settlement proceeds in a manner that circumvents the carrier's right of subrogation. *Tex. Workers' Comp. Ins. Fund v. Travis*, 912 S.W.2d 895, 898-99 (Tex. App.—Fort Worth 1995, no writ).

Because MHMR paid $59,377.40 in past benefits to the minor plaintiffs and because the minor plaintiffs are legal beneficiaries under the Act, MHMR has subrogation rights over the portion of the settlement proceeds that represents the minor plaintiffs' interests. *Hernandez*, 918 S.W.2d at 579. Thus, MHMR is entitled to receive reimbursement for past benefits paid from the "net amount" recovered by the minor plaintiffs on their wrongful death claims. Section 417.002(a). However, because Stacey's estate is not a legal beneficiary under the Act, MHMR has no subrogation right in any recovery of settlement proceeds by the estate on the survival claims. *Hernandez*, 918 S.W.2d at 579.

MHMR contends that the trial court erred in allocating 75% (over $3,000,000) of the total settlement proceeds to the survival claims. A decedent's personal injury action survives death and may be prosecuted on her behalf. TEX. CIV. PRAC. & REM. CODE ANN. § 71.021 (Vernon 2008); *Borth v. Charley's Concrete Co.*, 139 S.W.3d 391, 395 (Tex. App.—Fort Worth 2004, pet. denied). The purpose of the Texas Survival Act is to continue the decedent's cause of action beyond her death to redress her estate for her injuries. *Borth*, 139 S.W.3d at 395; *Russell v. Ingersoll-Rand Co.*, 795 S.W.2d 243, 245 (Tex. App.—Houston [1st Dist.] 1990), *aff'd*, 841 S.W.2d 343 (Tex. 1992). The actionable wrong in a survival action is that which the decedent suffered before death. *Borth*, 139 S.W.3d at 395. The damages recoverable are those that the decedent sustained while alive. *Id.* Any recovery obtained flows to those who would have received it had the decedent obtained a damages recovery immediately prior to death. *Id.* Thus, the heirs or legal representatives of a decedent's estate may recover for the physical pain, suffering, and property damage sustained by the decedent before death, as well as for medical

expenses and other damages. *Id.*; *see also* Comm. On Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: General Negligence & Intentional Personal Torts* PJC 10.2 (2008) (Submitting survival damages question for the decedent's pain and mental anguish, medical expenses, and funeral and burial expenses).

The Longs, as representatives of Stacey's estate, sought to recover survival damages "including but not limited to, funeral expenses, burial expenses, emergency medical costs, pain, suffering, mental anguish and pre-impact terror and other survival damages recognized by law." In a survival action, only pain consciously suffered and experienced by the decedent is compensable. *Borth*, 139 S.W.3d at 395; *Lee Lewis Constr., Inc. v. Harrison*, 64 S.W.3d 1, 14 (Tex. App.—Amarillo 1999), *aff'd*, 70 S.W.3d 778 (Tex. 2001). In this cause, the trial court allocated over $3,000,000 of the settlement proceeds to the survival claims, even though there was no evidence that Stacey suffered. It appears that Stacey died instantly on impact. There was also no evidence that Stacey was aware of the impending accident. However, even if Stacey had been aware for a split second that the accident was about to occur, that evidence would not have justified a substantial award for her mental anguish. *See Lee Lewis*, 64 S.W.3d at 15, 22 (Evidence that the deceased suffered mental anguish for 2.7 to 4 seconds as he fell from the tenth story of a building to his death was factually insufficient to support an award of $500,000 for his pain, suffering, and mental anguish damages; the court of appeals suggested remittitur of $450,000 of the award, the suggestion was accepted, and the award was reduced to $50,000.). At most, a minimal allocation of the settlement proceeds to the survival claims may have been justified, such as an award of funeral expenses.

The surviving spouse, children, and parents of a deceased are statutory beneficiaries for the purpose of bringing a wrongful death action. TEX. CIV. PRAC. & REM. CODE ANN. § 71.004 (Vernon 2008). The purpose of the Wrongful Death Act is to compensate the decedent's statutory beneficiaries for their loss of future care, maintenance, and support. *Russell*, 795 S.W.2d at 247. In a wrongful death action, a minor child is entitled to recover as damages such sums as the child's deceased parent would have reasonably contributed to the child's maintenance and support. *Murray v. Templeton*, 576 S.W.2d 138, 141 (Tex. Civ. App.—Texarkana 1978, no writ). For the wrongful death of an adult child, the parent of the child may recover as damages the amount that the child would have probably contributed to the parent's support had the child lived. *Mo.-Kan.-Tex. Ry. Co. v. Pierce*, 519 S.W.2d 157, 159 (Tex. Civ.

App.—Austin 1975, writ ref'd n.r.e.).  Wrongful death statutory beneficiaries are entitled to recover damages for loss of companionship and mental anguish.  *Estate of Clifton v. S. Pac. Transp. Co.*, 709 S.W.2d 636, 639 (Tex. 1986); *see also* Comm. On Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges:  General Negligence & Intentional Personal Torts* PJC 9.3 (2008) (Submitting wrongful death damages question for the statutory beneficiary's pecuniary loss, loss of companionship and society, mental anguish, and loss of inheritance).

On behalf of the minor plaintiffs, Hollingshead sought to recover wrongful death damages for the minor plaintiffs' mental anguish, pecuniary loss, loss of companionship and society, loss of consortium, and loss of inheritance.  For settlement purposes, the monetary value of the minor plaintiffs' wrongful death claims would have greatly exceeded the value of the Longs' wrongful death claims and the survival claims.  The record conclusively establishes that the trial court should have allocated most of the settlement proceeds to the minor plaintiffs' wrongful death claims.

Because the trial court's decision to allocate 75% of the settlement proceeds to the survival claims is not supported by the evidence, we conclude that the trial court erred in allocating the proceeds.  As a result of allocating over $3,000,000 to the survival claims, the trial court ultimately concluded that MHMR was entitled to a payment holiday of $244,382.97.  This amount likely will not be adequate to cover all future benefits.  Based on this circumstance, the erroneous allocation of the settlement proceeds effectively circumvented MHMR's right of subrogation.  MHMR's first appellate issue is sustained, and the issue of the allocation of settlement proceeds is remanded to the trial court for determination consistent with this opinion.

As stated above, the trial court concluded that MHMR had no interest in the settlement proceeds that were allocated to George because summary judgment had been granted to him on MHMR's claims.  When the trial court allocates the settlement proceeds on remand, MHMR should receive an advance against future benefits that is adequate to cover all future benefits. The trial court should include the proceeds allocated to George in calculating MHMR's payment holiday.  Section 417.002(a) of the Workers' Compensation Act provides that "[t]he net amount recovered by a claimant in a third-party action shall be used to reimburse the insurance carrier for benefits."  Settlement proceeds received from George constitute part of the "net amount" recovered by the minor plaintiffs.  Based on the clear language of Section 417.002(a), the "net

10

amount" recovered by the minor plaintiffs from George should be included in calculating MHMR's payment holiday.

*Award of Attorney's Fees to Plaintiffs' Attorneys out of MHMR's Recovery*

The trial court awarded plaintiffs' attorneys $19,792.47 in attorney's fees out of MHMR's subrogation recovery of $59,377.40 for payment of past workers' compensation benefits to the minor plaintiffs. The $19,792.47 amount represents one-third of MHMR's recovery for payment of past benefits. In its second issue, MHMR contends that the trial court erred in awarding attorney's fees to plaintiffs' attorneys out of its recovery.

Section 417.003 of the Act governs the award of attorney's fees out of an insurance carrier's subrogation recovery. TEX. LAB. CODE ANN. § 417.003 (Vernon 2006). This statute provides for three instances in which a claimant's attorney may recover attorney's fees based on a carrier's subrogation recovery: (1) where the carrier hires an attorney to represent it but that attorney does not actively represent it [Section 417.003(a)]; (2) where the claimant's attorney represents both the claimant and the carrier [Section 417.003(b)]; and (3) where the carrier has an attorney who actively represents it and participates in obtaining a recovery [Section 417.003(c)]. *Hartford Accident & Indem. Co. v. Buckland*, 882 S.W.2d 440, 446-47 (Tex. App.—Dallas 1994, writ denied); *Brandon v. Am. Sterilizer Co.*, 880 S.W.2d 488, 496 (Tex. App.—Austin 1994, no writ).

Donovan was hired to represent MHMR in this cause. Therefore, Section 417.003(b) does not apply. Section 417.003(a) applies when the carrier's attorney does not actively represent its interest. Section 417.003(a) provides that, if no agreement exists between the claimant's attorney and the carrier as to the amount of attorney's fees to be paid to the claimant's attorney, the trial court shall award attorney's fees and a proportionate share of expenses to the claimant's attorney payable out of the carrier's subrogation recovery. The amount of attorney's fees awarded may not exceed one-third of the carrier's recovery. *See* Section 417.003(a)(1).

The trial court found that MHMR's attorney did not actively represent its interest in obtaining a recovery from the defendants. An attorney "actively represents" and "actively participates in obtaining a recovery" when the attorney takes steps, adequate when measured by the difficulty of the case, toward prosecuting the claim. *Buckland*, 882 S.W.2d at 447. In determining whether an attorney actively represented the carrier's interest, the controlling factor

is not who aided in the claimant's recovery but, rather, who aided in the carrier's recovery. *Brandon*, 880 S.W.2d at 496.

In this cause, Donovan filed a plea in intervention and two amended pleas in intervention on behalf of MHMR. Donovan attended two rounds of depositions and mediation. On behalf of MHMR, he entered into stipulations with Elliott as to the amount of benefits that MHMR had paid to the minor plaintiffs and MHMR's subrogation rights. The Longs' counsel asserted that the trial court's summary judgments in favor of Rosales, Intermodal, and George against MHMR disposed of MHMR's subrogation claim and, therefore, precluded any recovery by MHMR from the settlement proceeds in this cause. Donovan filed a motion for order nunc pro tunc seeking clarification of the trial court's rulings on Rosales and Intermodal's motion for summary judgment. At the hearing on the motion, the Longs' counsel urged that the summary judgments extinguished all of MHMR's claims. The trial court entered an order granting MHMR's motion for order nunc pro tunc. The order clarified that the trial court had not granted summary judgment to Rosales and Intermodal on MHMR's reimbursement claim under the Act for workers' compensation benefits that had been paid to Stacey's children. Donovan clearly took steps to protect MHMR's subrogation rights and aided in its recovery. We conclude that Donovan actively represented MHMR's interest and actively participated in obtaining its recovery. Therefore, Section 417.003(a) does not apply.

Section 417.003(c) provides that, "[i]f an attorney actively representing the insurance carrier's interest actively participates in obtaining a recovery, the court shall award and apportion between the claimant's and the insurance carrier's attorneys a fee payable out of the insurance carrier's subrogation recovery." In apportioning the attorney's fees award, "the court shall consider the benefit accruing to the insurance carrier as a result of each attorney's service." Section 417.003(c). The total amount of attorney's fees awarded by the trial court under Section 417.003(c) may not exceed one-third of the carrier's recovery.

In its final judgment, the trial court awarded one-third of MHMR's recovery to the "[p]laintiffs' attorneys." The trial court did not specifically name the "[p]laintiffs' attorneys" to whom it had awarded fees. The plaintiffs' attorneys, with the exception of Elliott, opposed MHMR's recovery on its subrogation claim. When the trial court entered its final judgment, Elliott no longer represented Hollingshead as next friend of the minor plaintiffs. Therefore, the trial court apparently awarded one-third of MHMR's recovery as fees to attorneys who opposed

any recovery on MHMR's part, while awarding no attorney's fees to MHMR's attorney. We conclude that the trial court abused its discretion by awarding one-third of MHMR's recovery to attorneys who opposed that recovery. We sustain MHMR's second issue. On remand, the trial court may fully reconsider the attorney's fee issue under Section 417.003(c).

*Forfeiture of Elliott's Attorney's Fees*

The trial court found that Elliott breached the fiduciary duties that he owed to the minor plaintiffs and that, therefore, good cause existed to require the forfeiture of $100,000 of his attorney's fees to them. Elliott contends in his first issue that the trial court denied him due process of law in ordering that $100,000 of his attorney's fees be forfeited. A deprivation of personal property without due process violates the United States and Texas Constitutions. *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 658 (Tex. 2004); *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 363 (Tex. App.—Dallas 2009, pet. denied). At a minimum, due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Patient Advocates*, 136 S.W.3d at 658; *Tex. Integrated*, 300 S.W.3d at 363; *Derbigny v. Bank One*, 809 S.W.2d 292, 295 (Tex. App.—Houston [14th Dist.] 1991, no writ).

A lawyer who has engaged in a clear and serious breach of a duty to a client may be required to forfeit some or all of his or her legal fees in the matter. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 121 (Tex. 2009); *Burrow v. Arce*, 997 S.W.2d 229, 241-42 (Tex. 1999). However, in this cause, Hollingshead did not seek any relief from Elliott. Hollingshead neither sued Elliott nor alleged a fee forfeiture claim against him in any pleading. Therefore, the trial court granted relief to the minor plaintiffs that was not requested in any pleading.

The primary purpose of pleadings is to give an adversary party notice of one's claims and defenses, as well as notice of the relief sought. *Perez v. Briercroft Serv. Corp.*, 809 S.W.2d 216, 218 (Tex. 1991); *Herrington v. Sandcastle Condo. Ass'n*, 222 S.W.3d 99, 102 (Tex. App.—Houston [14th Dist.] 2006, no pet.). A trial court cannot grant relief to a party in the absence of pleadings supporting that relief, unless the issue has been tried by consent. *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983); *Marrs & Smith P'ship v. D.K. Boyd Oil & Gas Co.*, 223 S.W.3d 1, 18 (Tex. App.—El Paso 2005, pet. denied); *Binder v. Joe*, 193 S.W.3d 29, 32 (Tex. App.—Houston [1st Dist.] 2006, no pet.). The rule of trial by consent is limited to

those exceptional cases where the parties clearly tried an unpleaded issue by consent. *Marrs*, 223 S.W.3d at 18; *In re Walters*, 39 S.W.3d 280, 289 (Tex. App.—Texarkana 2001, no pet.); *Stephanz v. Laird*, 846 S.W.2d 895, 901 (Tex. App.—Houston [1st Dist.] 1993, writ denied). The rule should be applied cautiously, not in doubtful situations, and only where it appears from the record that the issue was actually tried, although not pleaded. *In re Walters*, 39 S.W.3d at 289. To determine whether the issue was tried by consent, the court must examine the record not for evidence of the issue, but evidence of trial of the issue. *Marrs*, 223 S.W.3d at 18; *Stephanz*, 846 S.W.2d at 901.

Hollingshead does not contend that the fee forfeiture issue was tried by consent, and the record would not support such a contention. First, there is no evidence in the record that a trial of the fee forfeiture issue occurred or, for that matter, that any trial occurred. This cause was called for a settlement hearing, not a trial. *See Ledbetter*, 251 S.W.3d at 37. Second, Hollingshead testified at the settlement hearing that he was satisfied with Elliott's representation of him and the minor plaintiffs. Hollingshead acknowledges in his appellate brief that "[n]o client of Mr. Elliott sought or pled to have Mr. Elliott's fee reduced" and that "no party sought relief from Mr. Elliott." This cause is not one of "those exceptional cases where the parties clearly tried an unpleaded issue by consent." *Marrs*, 223 S.W.3d at 18.

Because the trial court's judgment granting fee forfeiture is not supported by the pleadings, it is erroneous. *Cunningham*, 660 S.W.2d at 813. Elliott did not receive notice of a fee forfeiture claim, and he was denied an opportunity to be heard on such a claim. Therefore, we conclude that the trial court abused its discretion in finding that Elliott breached his fiduciary duties to the minor plaintiffs and in ordering that $100,000 of his attorney's fees be forfeited.

Elliott's first issue is sustained. Based on our ruling on his first issue, we need not address his second issue in which he asserts that the evidence was legally and factually insufficient to establish that he breached a fiduciary duty to the minor plaintiffs. TEX. R. APP. P. 47.1.

*Award of Attorney Ad Litem Fees*

The trial court awarded the attorney ad litem fees in the amount of $40,000. The trial court found that "[g]ood cause exists for the apportionment of the attorney *ad litem* fees in the amounts of $25,000.00 to be paid pro-rata by Defendants and $15,000.00 to be paid by Plaintiff's attorney Richard Elliott in light of the circumstances of this case and the conduct of

the parties and their counsel." Thus, the trial court ordered that "Defendants shall pay to [the attorney ad litem] the sum of $25,000.00, in addition to the $15,000.00 paid by Richard Elliott as additional attorney *ad litem* fees, with each Defendant paying [its] proportionate part of said additional fees."

Elliott contends in his third issue that the evidence was legally and factually insufficient to support the trial court's award and division of attorney ad litem fees. The trial court's award of fees to the attorney ad litem effectively required Elliott to forfeit an additional $15,000 of his attorney's fees. For the reasons stated in our analysis of Elliott's first issue, we conclude that the trial court erred in ordering Elliott to pay any part of the attorney ad litem fees. We sustain Elliott's third issue to the extent that the trial court should not have ordered him to pay attorney ad litem fees.

Based on our ruling, Elliott is no longer aggrieved by the trial court's award of attorney ad litem fees. He is not required to pay any of the fees. Therefore, it is not necessary for us to address his contention that the evidence was insufficient to support the total award of $40,000 in attorney ad litem fees. *See County of El Paso v. Ortega*, 847 S.W.2d 436, 441-42 (Tex. App.—El Paso 1993, no writ) ("It is a fundamental principle of appellate review that a party on appeal may not complain of errors that do not injuriously affect him or that merely affect the rights of others. . . . The right to appeal rests only in an aggrieved party to a lawsuit.").

We note that the trial court appointed an attorney ad litem, and not a guardian ad litem. Guardian ad litems and attorney ad litems serve different roles. A guardian ad litem is not an attorney for the child but is, instead, an officer appointed by the court to assist in properly protecting the child's interests. *Am. Gen. Fire & Cas. Co. v. Vandewater*, 907 S.W.2d 491, 493 n.2 (Tex. 1995); *see also* TEX. R. CIV. P. 173.4. An attorney ad litem, on the other hand, performs the same services as any other attorney, such as giving advice, doing research, and conducting litigation. *City of Houston v. Woods*, 138 S.W.3d 574, 582 (Tex. App.—Houston [14th Dist.] 2004, no pet.). By rule, guardian ad litem fees may be taxed as costs of court. TEX. R. CIV. P. 173.6. However, no rule allows attorney ad litem fees to be taxed as costs of court. *Woods*, 138 S.W.3d at 582. In a personal injury case, an attorney ad litem is compensated out of the funds recovered by the plaintiff. *Id.* at 583.

Thus, in this cause, the attorney ad litem should be compensated out of the settlement proceeds received by the minor plaintiffs.  Hollingshead has not challenged the award of attorney ad litem fees.

*This Court's Ruling*

The judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.


TERRY McCALL

JUSTICE


October 28, 2010

Panel consists of:  Wright, C.J.,
McCall, J., and Strange, J.