INSURANCE COMPANY OF NORTH AMERICA, Appellant,

v.

Sue WRIGHT, Individually and as Administratrix of the Estate of Bobby Clinton Wright, Deceased, and Gary Wright, Mark Wright, and Jeff Wright, Appellees.

No. 01–93–00327–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 25, 1994.

Rehearing Overruled Oct. 6, 1994.

Gary A. Scarzafava, Kathleen Walsh Beirne, Annelie Menke, Houston, for appellant.

Richard Warren Mithoff, Tommy Jacks, Scott Rothenberg, Houston, for appellees.

Before COHEN, WILSON and ANDELL, JJ.

## OPINION

COHEN, Justice.

Appellant, Insurance Company of North America (ICNA), appeals the trial court's approval of an apportionment of settlement proceeds.

### Factual and procedural background

In March 1991, Bobby Clinton Wright was killed when a train hit his pickup truck. Wright, self-employed, was killed in the course and scope of his employment. ICNA was his worker's compensation carrier.

Wright was survived by his wife Sue, his mother Bertha, and his grown sons, Jeff, Mark, and Gary. After Wright's death, ICNA paid Sue Wright medical expenses of $62.50, funeral expenses of $2,500, and worker's compensation indemnity benefits of $37,121.92. ICNA also began paying Sue Wright weekly death benefits of $428. As of the date of trial, the amount of benefits ICNA had paid Sue Wright, including weekly death benefits, totalled $40,968.42.

The surviving Wrights filed a wrongful death suit against: Southern Pacific Trans-

portation Company, the owner of the train that hit Wright; three members of the train crew; and Missouri Pacific Railroad Company, which owned the track and right-of-way where Wright was killed. Trial was set for November 30, 1992. On that date, the plaintiffs and Southern Pacific announced they had settled for $600,000. All other defendants had been dismissed. The plaintiffs agreed to the following apportionment:

| Sue Wright | $100,000 |
|---|---|
| Gary Wright | $160,000 |
| Mark Wright | $160,000 |
| Jeff Wright | $160,000 |
| Bertha Wright | $20,000 |

Sue Wright made the decision to apportion the settlement in this fashion. Southern Pacific did not play a role in determining the apportionment of the settlement proceeds, but had no objection to the apportionment. ICNA expressly approved the amount of the settlement, but objected to the apportionment. ICNA requested a jury trial on the issue of apportionment, but the trial judge denied this request.

The judgment indicates Southern Pacific agreed to pay plaintiffs $600,000 and the plaintiffs agreed to the apportionment indicated above. The judgment further reflects that ICNA had objected to the apportionment, but that the trial judge approved both the settlement and the apportionment of the settlement proceeds. In her findings of fact, the trial judge stated she "approved as fair and reasonable Plaintiffs' decision to apportion the settlement monies...."

The judgment also showed the following: ICNA and the plaintiffs had entered into a written stipulation that ICNA had a lien against Sue Wright for $40,968.42, an amount that would increase weekly as ICNA continued to pay weekly death benefits; Sue Wright's attorney's fees and expenses totalled $68,757.81; Sue Wright's net recovery was $31,242.19 ($100,000–$68,757.81); and ICNA was to resume Sue Wright's weekly benefits when her net recovery was exhausted. The trial judge's findings of fact reflect that Sue Wright's $31,242.19 was awarded to

ICNA, and that because the net amount recovered by Sue Wright was less than the stipulated amount of ICNA's lien, there was no amount in excess of past benefits and medical expenses that could be treated as an advance against future medical payments. As a result of the judgment, ICNA recovered only $31,242.19 of its $40,968.42 lien; it also had to continue making weekly benefit payments of $428 to Sue Wright because, after paying attorney's fees and costs and paying part of ICNA's lien, there was nothing left of Sue Wright's $100,000 that could be considered an advance against these payments.

ICNA brings 24 points of error. In its first point of error, ICNA complains that the trial judge erred in denying ICNA a jury trial on issues pertaining to its subrogation lien and credit for future benefits to be paid to Sue Wright. In points of error two through 24, ICNA complains that: (1) the trial judge erred by approving the plaintiffs' apportionment scheme and by determining its subrogation interest based on this apportionment; (2) the evidence does not support the apportionment; (3) the trial judge improperly subtracted attorneys' fees and litigation costs from Sue Wright's $100,000 in determining the "net amount" subject to subrogation; (4) the trial judge incorrectly determined the amount of the $100,000 to be treated as an advance against future benefit payments; and (5) the trial judge improperly refused to allow ICNA to question the plaintiffs concerning the reasons for the apportionment.

### The Texas Workers' Compensation Act

In December 1989, the Texas legislature repealed the existing workers' compensation act (the former Act)[1] and enacted a new workers' compensation scheme (the 1989 Act). The 1989 Act, effective January 1991, has been recodified in the Labor Code. The 1989 Act provided in part:

> If at the conclusion of a third party action, a workers' compensation claimant is entitled to compensation, the net amount

1. Act of May 15, 1973, 63d Leg., R.S., ch. 88, 1973 Tex.Gen.Laws 187, *amended by* Act of June 8, 1985, 69th Leg., R.S., ch. 326, 1985 Tex.Gen. Laws 1387, *repealed by* Act of December 13, 1989, 71st Leg., 2d C.S., ch. 1, 1989 Tex.Gen. Laws 1, 122 (current version at Tex.Lab.Code Ann. § 401.001 (Vernon Pamph.1994)).

recovered by the claimant from the third party action shall be applied to reimburse the insurance carrier for past medical benefits and medical expenses paid. Any amount in excess of past benefits and medical expenses shall be treated as an advance against future benefit payments of compensation that the claimant is entitled to receive under this Act. If the advance is adequate to cover all future compensation and medical benefit payments as provided by this Act, the insurance carrier is not required to make further payments. If the advance is insufficient, the insurance carrier shall resume payments when the advance is exhausted....

TEX.REV.CIV.STAT.ANN. art. 8308–4.05(f). Act of December 13, 1989, 71st Leg., 2d C.S., ch. 1, 1989 Tex.Gen.Laws 1, 33. The 1989 Act is applicable to this appeal because Bobby Wright died in March 1991.

### Waiver of jury trial and right to complete subrogation

In its first point of error, ICNA asserts the trial judge improperly denied its right to a jury trial. In point of error 24, ICNA complains the trial judge erred in finding it waived its statutory right to complete subrogation. We agree.

The trial judge's conclusions of law included the following:

5. If intervenor, INA, had not approved the total settlement of all Plaintiffs' claims and causes of action against all Defendants herein for the total sum of SIX HUNDRED THOUSAND DOLLARS AND NO CENTS ($600,000), the amount of damages, if any, to be awarded to each individual Plaintiff herein would have been determined by the jury.

6. Intervenor, INA, expressly waived any right it might have had to a jury apportionment of damages to each individual Plaintiff herein by agreeing to the settlement set forth herein.

■ The statement of facts is replete with ICNA's strenuous objections to the plaintiffs' apportionment scheme. The judgment and the trial judge's findings of fact both reflect that ICNA objected to the apportionment and that the trial judge approved the appor-

tionment over ICNA's objections. We have found no authority holding that by agreeing to the lump sum settlement amount, ICNA waived either its objections to the apportionment scheme, its right to a jury trial on the issue of apportionment, or its statutory subrogation rights. We hold the trial judge erred in finding ICNA waived its right to a jury apportionment of damages.

■ Plaintiffs assert that ICNA waived points of error one and 24 and cannot challenge conclusion of law number six on appeal because it did not set forth that point of error in its request for a limited record on appeal. Plaintiffs rely on TEX.R.APP.P. 53(d), which provides in part, "If appellant requests or prepares a *partial* statement of facts, he shall include in his request or proposal a statement of the points to be relied on and shall thereafter be limited to such points." (Emphasis added.) Here, ICNA requested and provided a complete statement of facts. Further, ICNA specifically designated as a point on appeal the trial court's denial of a jury trial. We find ICNA did not waive review of points of error one and 24.

We sustain points of error one and 24.

### Apportionment of the settlement proceeds

ICNA asserts that by allowing the plaintiffs to unilaterally apportion the settlement proceeds, the trial judge has allowed the plaintiffs to circumvent the requirements of the Workers' Compensation Act, effectively depriving ICNA of recovery of all sums paid in past benefits and forcing ICNA to continue weekly payments to Sue Wright. The plaintiffs argue that they were entitled to apportion the settlement proceeds among themselves, and that their decision to apportion $100,000 to Sue Wright is binding upon ICNA because ICNA's cause of action is derivative of Sue Wright's right to recover. The issue before this Court is whether a group of plaintiffs that includes both workers' compensation beneficiaries and non-beneficiaries can divide among themselves a lump sum settlement in a manner that prejudices the worker's compensation carrier's subrogation rights. We hold they cannot do so.

The wrongful death cause of action belonged to Bobby Clinton Wright's estate, which owned it subject to ICNA's right to reimbursement for compensation paid. *Guillot v. Hix,* 838 S.W.2d 230, 232 (Tex.1992); *New York Underwriters Ins. Co. v. State Farm Mutual Auto. Ins. Co.,* 856 S.W.2d 194, 199 (Tex.App.—Dallas 1993, no writ). This statutory right entitles the carrier to receive the first monies paid to an injured employee or his representatives by a third party tortfeasor; the employee or his representatives have no right to any of the funds received from the third party tortfeasor until the carrier receives payment in full. *New York Underwriters Ins. Co.,* 856 S.W.2d at 199; *Home Indemnity Co. v. Pate,* 814 S.W.2d 497, 498 (Tex.App.—Houston [1st Dist.] 1991, writ denied). The statutory scheme reduces the burden of insurance to the employer and to the public by preventing an employee from retaining proceeds from a settlement in addition to his compensation benefits while the carrier is only partially reimbursed for what it has paid. *Employers Cas. Co. v. Henager,* 852 S.W.2d 655, 658–59 (Tex.App.—Dallas 1993, writ denied). A workers' compensation carrier's right to reduce its liability due to the payment by a third party must not be compromised. *American General Fire & Cas. Co. v. McDonald,* 796 S.W.2d 201, 204 (Tex.App.—San Antonio 1990, writ denied).

ICNA does not have subrogation rights over the entire $600,000; it has subrogation rights only over Sue Wright's proceeds because she is the sole workers' compensation beneficiary. *See Bridges v. Texas A & M Univ. Sys.,* 790 S.W.2d 831, 834 (Tex.App.—Houston [14th Dist.] 1990, no writ). ICNA also concedes it cannot prevent the Wrights from dividing the settlement proceeds as they choose. ICNA argues, however, that the plaintiffs' apportionment agreement is not binding upon ICNA for purposes of recovery of its subrogation interest and that the trial court should not have based ICNA's subrogation interest on the plaintiffs' unilateral apportionment of the settlement proceeds. ICNA relies upon two cases, *Employers Casualty Co. v. Henager* and *American General Fire & Casualty Co. v. McDonald.*

In *McDonald,* the deceased worker's widow brought a third party action on behalf of herself and her minor child against the driver of the car that struck and killed her husband. The deceased worker's parents were also parties to the suit. The worker's compensation carrier intervened. The third party and the plaintiffs settled. The trial court allocated damages among the widow and the parents, awarded nothing to the minor, and ordered the carrier to continue paying weekly benefits to the minor. *McDonald,* 796 S.W.2d at 202. The widow received $128,467; the judgment reflected that, pursuant to an agreement between the widow and the deceased worker's father, the widow would "safeguard" $25,000 of her recovery, which was to be turned over to the minor when he reached 18. *Id.* The court of appeals found that by awarding the minor nothing and awarding the widow a recovery that was burdened by the agreement to set aside $25,000 for the minor, the trial court effectively gave the child a double recovery and denied the carrier its reimbursement rights. *Id.* at 204. The court stated, "The minor cannot arrange the apportionment of the settlement in such a way as to destroy the association's right to receive reimbursement for its payments." *Id.* at 205.

In *Henager,* two workers, Henager and Whitworth, were injured in a car accident. Henager was injured more seriously, received more worker's compensation benefits than Whitworth, and required medical treatment for the rest of his life. The two men filed suit against the third party; the carrier intervened. Henager, Whitworth and the third party informed the trial court they had reached a settlement; the third party would pay $70,000 into the court's registry, the two men would dismiss their claims against the third party, and the trial court would apportion the money to the claimants. Over the carrier's objection, the trial court agreed to the settlement, and called the case to trial. Henager filed a nonsuit and disclaimed any interest in the proceeds. *Henager,* 852 S.W.2d at 657. Although the carrier had paid Henager $31,167.99, the trial court denied both the carrier's subrogation rights to this amount and to any recovery for Henag-

er's future medical coverage because Henager was no longer a party to the suit and had disclaimed interest in the settlement proceeds. The trial court awarded the carrier only the $2,888.69 it had paid Whitworth, and awarded the remainder of the $70,000 to Whitworth. *Id.* at 658. Whitworth's attorney admitted Whitworth intended to give most of the settlement proceeds to Henager. *Id.* at 659. The court of appeals held that (1) the trial court erred in not awarding the carrier the past benefits it had paid to Henager, and (2) Henager's nonsuit was not effective because his dismissal prejudiced the rights of the carrier for declaratory relief with respect to the excess settlement proceeds. *Id.* at 659–60. The court of appeals rendered judgment that, out of the $70,000, the carrier recover the amount of past benefits it had paid to Henager and Whitworth, and remanded the case to determine the rights of Henager, Whitworth, and the carrier in the remaining proceeds. The court noted, "If the trial court denies [the carrier] any rights in the excess recovery, then Henager should be denied the right to receive any future medical benefits from [the carrier] to be consistent with the purpose and scheme of [the statute]." *Id.* at 660.

The Wrights argue that *McDonald* and *Henager* are not relevant because they involved sham arrangements that resulted in double recovery by the worker's compensation beneficiary; here, they assert, Sue Wright will not receive anything from the settlement proceeds and has no legal or equitable right to the proceeds apportioned to the other family members. In essence, they argue that in the absence of a bad faith or collusive apportionment that results in a double recovery, ICNA cannot challenge the apportionment. We disagree. Regardless of their intent, the effect of the apportionment was to circumvent the statute and to compromise ICNA's right to subrogation—a right that cannot be compromised. *See McDonald*, 796 S.W.2d at 204. The trial court erred in approving the plaintiffs' apportionment arrangement. Points of error four, five, eight, 13, 16, and 19 are sustained.

**2.** The trial judge deducted attorney's fees of $33,333 and litigation expenses of $35,424.81 from

### Sufficiency of the evidence

■ In points of error two, three, 14, 15, 17, and 18, ICNA asserts the evidence does not support the apportionment of $100,000 to Sue Wright. We agree.

When the trial judge denied its request for a jury trial, ICNA made a bill of exception. Three witnesses testified: Sue Wright and her sons, Gary and Mark. The testimony revealed that Sue Wright was the only plaintiff who lived with and was financially dependent on Bobby Wright; at the time of their father's death, Gary, Mark, and Jeff were all self-supporting adults. The testimony further revealed that Sue Wright decided upon the apportionment scheme for reasons that had nothing to do with the pecuniary or emotional loss of any of the plaintiffs. When asked why she should receive less than her sons for the loss of Bobby Wright, she responded, "It was my decision for my sons to receive more.... They all have children. They are grandchildren. My grandchildren will benefit from this more, and this would be pleasing to their grandfather, my husband."

We hold that the trial judge's finding that the apportionment scheme was "fair and reasonable" was against the great weight and preponderance of the evidence. We sustain points of error two, three, 14, 15, 17, and 18.

### Subrogation lien on past benefits and credit against future benefits

In points of error six, seven, 10, 11, 12, 16, 20, 21, and 23, ICNA complains the trial judge improperly determined the "net amount" subject to subrogation, and improperly used Sue Wright's net recovery to determine the amount of the advance against future benefits.

### 1. Net amount

■ ICNA asserts the trial court improperly subtracted attorney's fees and litigation expenses from the total amount of Sue Wright's portion of the settlement proceeds in determining the "net amount" subject to its $40,968.42 lien for past benefits.[2] ICNA

Sue Wright's $100,000, leaving $31,242.19 to be

further argues that even if attorney's fees and litigation expenses are properly deductible, the trial judge erred in deducting 100 percent of the litigation expenses for the entire lawsuit ($35,424.81) from Sue Wright's recovery; ICNA asserts that only a prorated amount should have been deducted.[3]

The trial judge's conclusions of law included the following:

3. The term "net amount recovered by a claimant" as used in TEX.REV.CIV.STAT. ANN. art. 8308–4.05(f) is defined as the sum of money actually received by or on behalf of a claimant, and does not include attorney's fees and costs of litigation that the claimant has contractually obligated herself to pay as a result of legal services rendered in the third-party action, or any money received by or on behalf of other individuals.

ICNA offers no authority for its assertion that attorney's fees are not properly deductible from the gross amount recovered. However, both ICNA and plaintiffs agree that only two reported cases address the issue of litigation costs. In *Aetna Casualty and Surety Co. v. Harjo*, 766 S.W.2d 583 (Tex. App.—Beaumont 1989, no writ), the Beaumont Court of Appeals refused to allow litigation expenses to be deducted from the insurance carrier's subrogation award. *Id.* at 584. In *Bridges v. Texas A & M University System*, 790 S.W.2d 831 (Tex.App.—Houston [14th Dist.] 1990, no writ), the Fourteenth Court of Appeals held that attorney's fees and expenses should be deducted from the total amount recovered from the third party before the worker's compensation carrier is reimbursed. *Id.* at 833. ICNA asks this Court to follow *Harjo;* the plaintiffs rely on *Bridges*.

Both *Harjo* and *Bridges* construed provisions of the former Act, TEX.REV.CIV.STAT. ANN. art. 8307, § 6a[4], which provided in pertinent part:

(a) If the injury for which compensation is payable under this law was caused under circumstances creating a legal liability in some person other than the subscriber to pay damages in respect thereof, the employee may proceed either at law against that person to recover damages or against the association for compensation under this law, and if he proceeds at law against the person other than the subscriber, then he shall not be held to have waived his rights to compensation under this law. *If the claimant is a beneficiary under the death benefits provisions [of this statute], a judgment shall not constitute an election but the amount of such recovery shall first pay costs and attorney's fees and then reimburse the association,* and if there be any excess it shall be paid to the beneficiaries in the same ratio as they received death benefits and the association shall suspend further payments of benefits until the suspended benefits shall equal the amount of such excess at which time the benefits shall be resumed. If compensation be claimed under this law by the injured employee or his beneficiaries then the association shall be subrogated to the rights of the injured employee, and may enforce in the name of the injured employee or of his legal beneficiaries the liability of said other person, and in case the recovery is for a sum greater than that paid or assumed by the association to the employee or his legal beneficiaries, then out of the sum so recovered the association shall reimburse itself and pay said costs and the excess so recovered shall be paid to the injured employee or his beneficiaries. *However, when the claimant is represented by an attorney, and the association's interest is not actively represented by an attorney, the association shall pay such fee to the claimant's attorney not to exceed one-third (⅓) of said subrogation recovery or as may have been agreed upon between the claimant's attorney and the associa-*

---

applied to ICNA's $40,968.42 lien for past benefits.

3. ICNA asserts that because Sue Wright recovered only one-sixth of the total settlement, only one-sixth of the litigation expenses should have been deducted from her award.

4. Act of June 8, 1985, 69th Leg., R.S., ch. 326, 1985 Tex.Gen.Laws 1387, 1387–88, *repealed by* Act of December 13, 1989, 71st Leg., 2d C.S., ch. 1, 1989 Tex.Gen.Laws 1, 122 (current version at TEX.LAB.CODE ANN. § 417.002 (Vernon Pamph. 1994)).

*tion or in the absence of such agreement the court shall allow a reasonable attorney's fee to the claimant's attorney for recovery of the association's interest which in no case shall exceed thirty-three and one-third per cent (33⅓%) payable out of the association's part of the recovery....*

....

*(c) If at the conclusion of a third party action a workmen's compensation beneficiary is entitled to compensation, the net amount recovered by such beneficiary from the third party action shall be applied to reimburse the association for past benefits and medical expenses paid and any amount in excess of past benefits and medical expenses shall be treated as an advance against future benefit payments of compensation to which the beneficiary is entitled to receive under the Act.* When the advance is adequate to cover all future compensation and medical benefit payments as provided by this law, no further payments shall be made by the association but if insufficient, the association shall resume such payments when the advance is exhausted....

(Emphasis added.) The former Act thus specified that if the claimant was a beneficiary of a deceased employee, the proceeds must first be applied to costs and attorney's fees and then to reimburse the insurer. The 1989 Act does not contain such a provision. *See* 5 J. Edgar & J. Sales, TEXAS TORTS AND REMEDIES § 107.11A[2] (1994).

We think *Harjo* is inapplicable to the case before us. Although the opinion does not explicitly so state, it appears that *Harjo* concerned that portion of section 6a(a) of the former Act that concerned an insurance carrier's obligation to pay the claimant's attorney for recovery of the carrier's interest.[5] The award of litigation expenses that the *Harjo* court disallowed came from the insurance carrier's subrogation award, and not the total recovery. *Harjo,* 766 S.W.2d at 583. We do, however, find the *Bridges* court's discussion of "net amount" relevant to this case.

Article 8308–4.05(f), like its predecessor statute, article 8307, § 6a, provided that the *net amount* recovered by the claimant from the third party action shall be applied to reimburse the insurance carrier for past benefits and medical expenses paid. In *Bridges,* the Fourteenth Court of Appeals defined "net" as "free from charges or deductions." *Bridges,* 790 S.W.2d at 833. The court went on to state:

The "net" amount of a recovery is therefore obtained after deducting all expenses necessary for achieving the settlement or judgment. The explicit language of article 8307, section 6a, dictates that the carrier will be reimbursed for the *net* amount recovered from the third-party action, and clearly attorney's fees and court costs would be expenses incurred by the claimant in obtaining his third-party settlement and would not be included in calculating the credit.

*Id.* (citations omitted). We find that the "net amount" subject to subrogation is the amount received by the claimant after appropriate deductions for attorney's fees and court costs have been taken. We agree with ICNA, however, that the trial judge erred in deducting all the litigation expenses for the entire $600,000 recovery from Sue Wright's portion of the settlement. Deducting expenses attributable to nonbeneficiary plaintiffs' recovery from the beneficiary's portion of the recovery compromised the carrier's right to reduce its liability. We therefore sustain points of error six, seven and 10.

**2. Advance against future benefit payments**

■ ICNA asserts the trial judge improperly used the amount of Sue Wright's net recovery to determine the amount of the advance against future benefits. The trial judge's conclusions of law included the following:

4. The word "amount" as used in the second sentence of TEX.REV.CIV.STAT.ANN. art. 8308–4.05(f), necessarily refers back to, and is construed to mean "net amount

---

5. ICNA notes that plaintiffs' attorney did not seek attorney's fees for recovery of ICNA's subroga-

tion interest.

recovered by the claimant from the third party" in the preceding sentence.

ICNA relies upon the language of article 8308–4.05(f), the entire relevant provision of which provided:

[T]he net amount recovered by the claimant from the third party action shall be applied to reimburse the insurance carrier for past benefits and medical expenses paid. Any amount in excess of past benefits and medical expenses shall be treated as an advance against future benefit payments of compensation that the claimant is entitled to receive under this Act.[6]

The former Act included an identical provision. *See* article 8307, § 6a(c). We agree with the Wrights that the word "amount" in the second sentence quoted above refers back to the words "net amount" in the preceding sentence. We hold that "any amount in excess of past benefits" means the net amount recovered by the claimant after excluding attorney's fees and litigation expenses. Thus, we overrule points of error 11 and 12. In points of error 16, 20, 21, and 23, ICNA complains that: the trial judge erred in finding there was no amount in excess of past benefits and expenses that could be treated as an advance against future payments; the trial judge erred by not awarding ICNA the full amount of its lien; the trial judge erred by not awarding it a credit toward all future payments; and the trial court erred in not terminating all future workers' compensation benefits. ICNA asks us to reverse and render judgment in its favor. These points of error are overruled.

### Trial judge's refusal to allow ICNA to question plaintiffs regarding reasons for the apportionment

■ In point of error 22, ICNA complains the trial judge erred by not allowing

ICNA's trial attorney to ask Sue Wright certain questions regarding the apportionment scheme.[7] ICNA refers to the following exchanges:

Q. (By Mr. Scarzafava [ICNA's attorney]): And what factors did you consider in making the decision to apportion the money with your receiving 100,000, your children receiving 160,000 each and your mother-in-law receiving—

Mr. Mithoff [plaintiffs' counsel]: I will object at this time and ask that my client assert the attorney-client privilege in that this inquires into matters discussed between myself and Mrs. Wright and the other members of the family.

Mr. Scarzafava: Your Honor, if I may respond, the issue in this case and the issue for this hearing is the reasonableness of the settlement in this case.

The Court: This is a bill that you are making. I assume this is the evidence you would want presented before the jury.

Mr. Scarzafava: Also, I think this is evidence for you to consider in your making the apportionment which, if I understand your determination, you find is a question for the Court and not a question for the jury.

. . . .

The Court: The objection is sustained.

Q. (By Mr. Scarzafava): When you made the decision to apportion the money with 100,000 to you, 160,000 to each of your children and 20,000 to your mother-in-law, did you take into consideration the tax consequences of taxes that may be saved, as opposed to your giving gifts to your children or grandchildren or others?

---

6. The recodified version of this provision reads:

(a) The net amount recovered by a claimant in a third-party action shall be used to reimburse the insurance carrier for benefits, including medical benefits, that have been paid for the compensable injury.

(b) Any amount recovered that exceeds the amount of the reimbursement required under Subsection (a) shall be treated as an advance against future benefits, including medical benefits, that the claimant is entitled to receive under this subtitle.

TEX.LAB.CODE ANN. § 417.002 (Vernon Pamph. 1994).

7. ICNA also notes the trial judge sustained objections to certain questions asked of Gary and Gregory Wright. The objections were sustained on the bases of repetitiveness and relevancy. ICNA presents argument and authority only on the issue of attorney-client privilege. ICNA has therefore waived review of the objections to questions asked of Gary and Gregory.

Mr. Mithoff: Object to that. It calls upon matters that may have been discussed in attorney-client privilege.

. . . .

The Court: I sustain the objection.

Q. (By Mr. Scarzafava): Mrs. Wright, when you were sitting down and deciding how much you would receive as opposed to how much each of your children would receive and how much your mother-in-law would receive, did you take into consideration the consequences of a recovery for you as to your ability to receive future Worker's Compensation benefits?

Mr. Mithoff: I will object to that on the same basis previously stated, invades attorney-client privilege, is not relevant to any issue that would be submitted to this jury.

The Court: Sustained.

ICNA asserts the questions did not ask for disclosure of confidential communications, but, rather, inquired into Sue Wright's motives in deciding to apportion the settlement proceeds as she did. Plaintiffs assert the questions were clearly objectionable because they constituted inquiry regarding confidential communications between Sue Wright and her attorney.

A client has a privilege to refuse to disclose confidential communications made for the purpose of facilitating the rendition of professional legal services between the client and her lawyer. TEX.R.CIV.EVID. 503(b). A communication is confidential if it is not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client. TEX.R.CIV.EVID. 503(a)(5).

We agree with ICNA that the quoted questions were not objectionable. The questions contained no inquiry regarding confidential communications between Sue Wright and her attorney; they inquired about her motives concerning the apportionment scheme. We sustain point of error 22.

### Conclusion

We reverse the judgment's apportionment of the settlement proceeds, and we remand this case to the trial court for a jury trial on the amount of damages to be awarded to each plaintiff.