Opinion filed October 28,
2010

 

 

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-08-00256-CV 

                                                    __________

 

RICHARD ELLIOTT AND WEST TEXAS CENTERS FOR MHMR,
Appellants

 

                                                             V.

 

GREGORY HOLLINGSHEAD, AS NEXT FRIEND AND GUARDIAN OF
THE PERSON OF KELCEY HOLLINGSHEAD, KLAYTON HOLLINGSHEAD, AND KANYON
HOLLINGSHEAD, MINORS, Appellee



 

                                   On
Appeal from the 32nd District Court

 

                                                            Nolan
County, Texas

 

                                                     Trial
Court Cause No. 18,701

 



 

                                                                  O
P I N I O N

            This
is a wrongful death and survival action arising from an automobile accident. Appellants,
Richard Elliott and West Texas Centers for MHMR (MHMR), appeal from the trial
court’s judgment allocating settlement proceeds.  We reverse the trial court’s
judgment and remand this cause to the trial court for further proceedings
consistent with this opinion.  

Background

            On
April 12, 2006, Stacey Hollingshead was driving her minivan in the westbound
lanes of Interstate 20 while in the course and scope of her employment with
MHMR.  At the same time, Jose Rosales was driving an eighteen-wheeler in the
eastbound lanes of Interstate 20.  Rosales lost control of his truck, crossed
the median of the highway, and entered the westbound lanes of the highway.  At
one point, Rosales’s truck blocked the westbound lanes.  Stacey’s minivan
struck Rosales’s trailer and became lodged underneath it.  Stacey was
pronounced dead at the scene.

            Stacey
was survived by her minor children, Kelcey, Klayton, and Kanyon Hollingshead.  Stacey
had formerly been married to Gregory Hollingshead.  Stacey and Gregory divorced
prior to the accident.  Stacey’s employer, MHMR, is a self-insured governmental
entity for workers’ compensation purposes, and it is a member of the Texas
Council Risk Management Fund, which is a risk management pool of political
subdivisions.  Following Stacey’s death, the risk management fund began paying weekly
workers’ compensation death benefits to Stacey’s children in the amount of $471.60
($157.20 per child).

            As a
result of Stacey’s death, appellee Gregory Hollingshead, individually and as next
friend and guardian of the person of Kelcey Hollingshead, Klayton Hollingshead,
and Kanyon Hollingshead, minors, filed a wrongful death suit against Rosales
and two other defendants, Intermodal Cartage Co., Inc. and Flexi Van Leasing,
Inc.[1]
 Elliott is an attorney, and he represented Hollingshead and the minor children
in the wrongful death suit.  In the wrongful death petition, Hollingshead alleged
that, at the time of the accident, Rosales was acting in the course and scope
of his employment with Intermodal and Flexi Van Leasing and in the furtherance
of their business.  Stacey’s parents, Roy Long and Ernestine Long, intervened
in the suit and asserted wrongful death claims against the defendants.[2]
 The law firm of Forbes & Forbes represented the Longs in connection with
their intervention.  Later, the law firm of Hall & Hall, L.L.P., joined the
Forbes firm in the representation of the Longs.  MHMR also intervened in the
suit, seeking reimbursement for the workers’ compensation benefits that had been
paid to Stacey’s minor children.  Michael J. Donovan of the law firm of Burns,
Anderson, Jury, & Brenner, L.L.P., represented MHMR in connection with its
intervention.

            In an
amended plea in intervention, the Longs added Mark George and Translead Hyundai
as defendants.  The Longs alleged that Intermodal and George were “alter-egos
of each other” and, as such, were “jointly and severally liable for the damages
alleged herein and liable for each other’s liability.”  The Longs alleged that
Hyundai had designed, engineered, manufactured, and marketed the trailer that
was involved in the accident and that the trailer was defective.  The Longs
also added a survival action against the defendants.  Hollingshead filed a plea
in intervention in which he asserted claims against George and Hyundai, and
MHMR amended its plea in intervention to assert claims against George and Hyundai.

            Defendants
Rosales, Intermodal, and George moved for summary judgment against
Hollingshead, the Longs, and MHMR.  MHMR did not respond to the motions for
summary judgment, and its counsel did not appear at the hearing on the motions.
 The trial court entered orders granting summary judgment in favor of Rosales,
Intermodal, and George against MHMR.  The trial court denied summary judgment
to Rosales, Intermodal, and George on Hollingshead’s claims and the Longs’
claims.

            The
Longs’ counsel asserted that the summary judgments entered in favor of Rosales,
Intermodal, and George against MHMR disposed of MHMR’s claim for reimbursement
of workers’ compensation benefits that had been paid to the minor plaintiffs.  MHMR
filed a motion for order nunc pro tunc seeking clarification of the trial court’s
orders granting summary judgment to Rosales and Intermodal against it.  The
trial court granted MHMR’s motion, rescinded its previous summary judgment
order regarding Rosales and Intermodal’s motion for summary judgment, and
entered a new corrected order.  In the new order, the trial court granted partial
summary judgment to Rosales and Intermodal “as to Intervenor [MHMR] on the
issues of gross negligence and standing as a statutory beneficiary under the
Texas Survival Statute and Texas Wrongful Death Statute.”  This order made
clear that the trial court had not granted summary judgment to Rosales and
Intermodal on MHMR’s claim for reimbursement of workers’ compensation benefits that
had been paid to Stacey’s children.

            Upon
motion by the Longs, the trial court realigned them as plaintiffs.  The trial
court also appointed Burt L. Burnett as attorney ad litem for Stacey’s
children.  Ultimately, Hollingshead and the Longs agreed to settle the claims
against all defendants for a total of $4,016,461.99.  This total amount
consisted of the following payments from the defendants: (1) $3,996,461.99
from Rosales, Intermodal, George, or their insurers; (2) $15,000 from Flexi Van
or its insurer; and (3) $5,000 from Hyundai or its insurer.

            On
June 24, 2008, the trial court held a settlement hearing.  We have reviewed the
testimony from the hearing in its entirety.  The evidence showed that $2,100,000
of the settlement proceeds had been used to fund annuities for the benefit of
the minor plaintiffs. At the hearing, MHMR sought reimbursement for benefits
and funeral expenses it had paid totaling $59,377.40.  The attorney ad litem
and the Longs’ counsel raised questions about Elliott’s representation of the
minor plaintiffs.  After hearing the evidence and argument from counsel, the
trial court approved the settlement.  The trial court also approved the claims
of the Forbes firm and the Hall firm for attorney’s fees and costs.  The trial
court then stated:

 As
to Mr. Elliott, I have some concerns as to the timing of some of the things
that happened.  I’m going to approve certainly the attorneys’ fees with -- I
guess a total amount of attorneys’ fees and expenses of $616,766.50, with
$200,000 of that to be interpled into the Court pending potential appeals that
may take place.

 

The trial court
also concluded that Elliott’s actions had caused the attorney ad litem to incur
additional attorney’s fees.  Therefore, the trial court found that $15,000 of
Elliott’s attorney’s fees should be paid toward the attorney ad litem’s total
approved fee of $40,000.

            On
July 21, 2008, the trial court entered a judgment approving the settlement.  In
the judgment, the trial court ordered that the amount of $259,377.40 be paid
into the registry of the court “to be disbursed on further order of the Court
as it relates to any additional attorney’s fees that may be owed Richard
Elliott and any funds that may or may not be owed to the Intervenor, West Texas
Center for MHMR.”  After the trial court entered the judgment, Hollingshead
terminated Elliott’s representation of him and the minor plaintiffs.  Later,
the Hall law firm began representation of Hollingshead and the minor plaintiffs,
and that representation continues in this appeal.  Elliott filed a plea in
intervention seeking to recover his attorney’s fees.  Elliott and MHMR filed
notices of appeal from the judgment.  However, because the judgment did not
dispose of all parties and claims, it was not a final, appealable judgment.  Therefore,
we did not have jurisdiction to entertain the appeal at that time.  We abated
the appeal to allow the trial court to render a final judgment disposing of all
parties and claims.

            On
February 27, 2009, the trial court held another hearing.  On March 20, 2009,
the trial court entered a final judgment approving the settlement.  The trial
court included a number of findings in its judgment.  The trial court allocated
75% of the settlement proceeds to the survival claims brought on behalf of
Stacey’s estate and 25% of the settlement proceeds to the wrongful death
claims.  Thus, of the $4,016,461.99 in settlement proceeds, the trial court
allocated $3,012,346.50 to the survival claims and $1,004,115.50 to the
wrongful death claims.  Of the $3,996,461.99 in settlement proceeds paid by
Rosales, Intermodal, George, or their insurers, the trial court (1) allocated
$2,997,346.49 to the survival claims and $999,115.50 to the wrongful death
claims and (2) allocated damages as to Rosales to be $1,000,000, as to Intermodal
to be $1,000,000, and as to George to be $1,996,416.99.

            The
trial court found that MHMR had paid $59,377.40 in past workers’ compensation
benefits to the minor plaintiffs.  The trial court found that MHMR was subrogated
in the settlement proceeds for payment of past benefits in the amount of $39,584.93,
which represented the amount it had paid in past benefits ($59,377.40) reduced
by one-third ($19,792.47) for payment of fees to plaintiffs’ attorneys.  The
trial court reduced the $39,584.93 amount by a pro rata share of expenses
in the amount of $3,574.71 that it allocated to MHMR’s claim for reimbursement
of past benefits paid.  Therefore, the trial court concluded that MHMR was
entitled to payment from the minor plaintiffs on its subrogation claim for
payment of past benefits in the amount of $36,010.22.

            In
determining MHMR’s advance against future benefit payments, which is known as a
“payment holiday,” the trial court found that MHMR had no subrogation rights in
the settlement 

proceeds that had been allocated to the survival claims ($3,012,346.50) and to the
Longs’ wrongful death claims ($353,523.42).  The trial court stated that MHMR
had subrogation rights “only in the net recovery by [the minor plaintiffs] for
their wrongful death claims.”  The trial court found that “[t]he wrongful death
proceeds to the minor Plaintiffs in this suit are $650,592.08, which represents
the $1,004,115.50 paid to settle all wrongful death claims less $353,523.42
allocated to Roy Long’s and Ernestine Long’s individual wrongful death claims.” 
Because summary judgment had been granted to George on MHMR’s claims, the trial
court found that MHMR had “no interest in any settlement proceeds allocated to
or paid by Defendant Mark George.”  Therefore, the trial court reduced the
$650,592.08 figure that it allocated to the minor plaintiffs’ wrongful death
claims by the percentage of settlement proceeds that it allocated to George and
arrived at a figure of $323,344.26.  The trial court concluded that $323,344.26
was the net amount recovered by the minor plaintiffs on their wrongful death
claims and was, therefore, “the total amount of settlement proceeds available
to satisfy any possible or alleged subrogation claims and/or benefit payment
holiday of Intervenor, MHMR.”

            In
calculating MHMR’s future payment holiday, the trial court reduced the
$323,344.26 figure by $59,377.40, which represented the amount of past benefits
paid, and by $19,583.89 in expenses that it allocated to MHMR’s claim.  Therefore,
the trial court concluded that MHMR was entitled to a payment holiday of
$244,382.97.

            The
trial court found that Elliott breached the fiduciary duties that he owed to
the minor plaintiffs in representing them in this cause.  Based on this
finding, the trial court concluded that “[g]ood cause exists for the
apportionment of the attorney ad litem fees in the amounts of $25,000.00
to be paid pro-rata by Defendants and $15,000.00 to be paid by Plaintiff’s
attorney Richard Elliott in light of the circumstances of this case and the
conduct of the parties and their counsel.”  The trial court also found that
“[g]ood cause exists to require $100,000 of the attorney’s fees claimed by Richard
Elliott to be paid to or for the benefit of the minor children.”

            The
trial court ordered that the district clerk disburse the funds that had been
held in the registry of the court by issuing (1) a check payable to “Richard
Elliott” in the amount of $100,000, (2) a check payable to “Texas Council Risk
Management Fund (MHMR)” in the amount of $36,010.22, and (3) a check payable to
“The Estate of Stacey Hollingshead” in the amount of $143,460.55.  The trial
court ordered that the amount paid to the estate be used solely for the benefit
of Stacey’s minor heirs, who were the minor plaintiffs in this cause.  The
trial court awarded the attorney ad litem a total fee of $40,000, with $25,000
of the fee to be paid by the defendants on a proportionate share basis and $15,000
of the fee to be paid by Elliott.    

Issues
on Appeal

            MHMR
presents two issues for review.  In its first issue, it contends that the trial
court erred in allocating the settlement proceeds and calculating its credit
against future benefit payments and that, therefore, the trial court’s judgment
impermissibly compromised its subrogation rights.  In its second issue, it
contends that the trial court erred in awarding attorney’s fees to the
plaintiffs’ attorneys out of its recovery of $59,377.40 for past benefits paid.


            Elliott
presents three issues for review.  In his first issue, he contends that the
trial court violated his due process rights in ordering that $100,000 of his
attorney’s fees be forfeited to the minor plaintiffs.  In his second issue, he
contends that the evidence was legally and factually insufficient to establish
that he breached a fiduciary duty to the minor plaintiffs.  In his third issue,
he contends that the evidence was legally and factually insufficient to support
the trial court’s award and division of attorney ad litem fees.

MHMR’s
Subrogation Rights

            A
workers’ compensation insurance carrier that has paid benefits to a legal
beneficiary of an employee has a subrogation right in the legal beneficiary’s
claims against third parties.  Tex. Lab.
Code Ann. §§ 417.001-.002 (Vernon 2006).  The Workers’ Compensation Act
defines “legal beneficiary” as a person who is entitled to receive a death
benefit under the Act.  Tex. Lab. Code Ann.
§ 401.011(29) (Vernon Supp. 2010).  Self-insured governmental entities, such as
MHMR, fall within the Act’s definition of “insurance carrier.”  Section
401.011(27)(D).

            Under
Section 417.001(b) of the Act, an “insurance carrier is subrogated to the
rights of the injured employee and may enforce the liability of the third party
in the name of the injured employee or the legal beneficiary.”  Section
417.002(a) provides that “[t]he net amount recovered by a claimant in a third-party
action shall be used to reimburse the insurance carrier for benefits, including
medical benefits, that have been paid for the compensable injury.”  When a
workers’ compensation beneficiary settles a claim against a tortfeasor, the
compensation carrier has a right of reimbursement from the first monies paid by
the tortfeasor.  Tex. Mut. Ins. Co. v. Ledbetter, 251 S.W.3d 31, 35
(Tex. 2008).  The insurance carrier’s right to reduce its liability from a
payment of a third party must not be compromised.  U.S. Fire Ins. Co. v.
Hernandez, 918 S.W.2d 576, 578 (Tex. App.—Corpus Christi 1996, writ denied);
Ins. Co. of N. Am. v. Wright, 886 S.W.2d 337, 341 (Tex. App.—Houston [1st
Dist.] 1994, writ denied).  The carrier’s right to reimbursement is mandatory,
and until the carrier is reimbursed in full, a legal beneficiary has no right
to any of the settlement funds.  Ledbetter, 251 S.W.3d at 36.  Any net
recovery by a legal beneficiary in a third-party action that exceeds the amount
of past benefits paid by the carrier “shall be treated as an advance against
future benefits.”  Section 417.002(b).  If an advance against future benefits
“is adequate to cover all future benefits, the insurance carrier is not required
to resume the payment of benefits.”  Section 417.002(c).  However, “[i]f the
advance is insufficient, the insurance carrier shall resume the payment of
benefits when the advance is exhausted.”  Id.

            The
carrier has subrogation rights over the portion of an award or settlement in a
third-party action that represents the interest of a workers’ compensation
beneficiary.  Hernandez, 918 S.W.2d at 578; Wright, 886 S.W.2d at
341.  The trial court may not enter a judgment that arbitrarily compromises the
carrier’s right to subrogation by structuring the award so that a
non-beneficiary recovers, but a beneficiary does not.  Hernandez, 918
S.W.2d at 579.  When the allocation of settlement proceeds impacts a carrier’s
right of reimbursement, the trial court must allocate the proceeds based upon
the relative merits and worth of the claims involved.  Id.  Trial courts
cannot apportion settlement proceeds in a manner that circumvents the carrier’s
right of subrogation.  Tex. Workers’ Comp. Ins. Fund v. Travis, 912 S.W.2d
895, 898-99 (Tex. App.—Fort Worth 1995, no writ).

            Because
MHMR paid $59,377.40 in past benefits to the minor plaintiffs and because the
minor plaintiffs are legal beneficiaries under the Act, MHMR has subrogation
rights over the portion of the settlement proceeds that represents the minor
plaintiffs’ interests.  Hernandez, 918 S.W.2d at 579.  Thus, MHMR is
entitled to receive reimbursement for past benefits paid from the “net amount”
recovered by the minor plaintiffs on their wrongful death claims. Section 417.002(a). 
However, because Stacey’s estate is not a legal beneficiary under the Act, MHMR
has no subrogation right in any recovery of settlement proceeds by the estate
on the survival claims.  Hernandez, 918 S.W.2d at 579.

            MHMR
contends that the trial court erred in allocating 75% (over $3,000,000) of the
total settlement proceeds to the survival claims.  A decedent’s personal injury
action survives death and may be prosecuted on her behalf.  Tex. Civ. Prac. & Rem. Code Ann. §
71.021 (Vernon 2008); Borth v. Charley’s Concrete Co., 139 S.W.3d 391,
395 (Tex. App.—Fort Worth 2004, pet. denied).  The purpose of the Texas
Survival Act is to continue the decedent’s cause of action beyond her death to
redress her estate for her injuries.  Borth, 139 S.W.3d at 395; Russell
v. Ingersoll-Rand Co., 795 S.W.2d 243, 245 (Tex. App.—Houston [1st Dist.]
1990), aff’d, 841 S.W.2d 343 (Tex. 1992).  The actionable wrong in a
survival action is that which the decedent suffered before death.  Borth,
139 S.W.3d at 395.  The damages recoverable are those that the decedent
sustained while alive.  Id.  Any recovery obtained flows to those who
would have received it had the decedent obtained a damages recovery immediately
prior to death.  Id.  Thus, the heirs or legal representatives of a
decedent’s estate may recover for the physical pain, suffering, and property
damage sustained by the decedent before death, as well as for medical expenses
and other damages.  Id.; see also Comm. On Pattern Jury Charges,
State Bar of Tex., Texas Pattern Jury Charges:  General Negligence &
Intentional Personal Torts PJC 10.2 (2008) (Submitting survival damages
question for the decedent’s pain and mental anguish, medical expenses, and
funeral and burial expenses).

            The
Longs, as representatives of Stacey’s estate, sought to recover survival
damages “including but not limited to, funeral expenses, burial expenses,
emergency medical costs, pain, suffering, mental anguish and pre-impact terror
and other survival damages recognized by law.”  In a survival action, only pain
consciously suffered and experienced by the decedent is compensable.  Borth,
139 S.W.3d at 395; Lee Lewis Constr., Inc. v. Harrison, 64 S.W.3d 1, 14
(Tex. App.—Amarillo 1999), aff’d, 70 S.W.3d 778 (Tex. 2001).  In
this cause, the trial court allocated over $3,000,000 of the settlement
proceeds to the survival claims, even though there was no evidence that Stacey
suffered.  It appears that Stacey died instantly on impact.  There was also no
evidence that Stacey was aware of the impending accident.  However, even if
Stacey had been aware for a split second that the accident was about to occur,
that evidence would not have justified a substantial award for her mental
anguish.  See Lee Lewis, 64 S.W.3d at 15, 22 (Evidence that the deceased
suffered mental anguish for 2.7 to 4 seconds as he fell from the tenth story of
a building to his death was factually insufficient to support an award of
$500,000 for his pain, suffering, and mental anguish damages; the court of
appeals suggested remittitur of $450,000 of the award, the suggestion was
accepted, and the award was reduced to $50,000.).  At most, a minimal
allocation of the settlement proceeds to the survival claims may have been
justified, such as an award of funeral expenses.

            The
surviving spouse, children, and parents of a deceased are statutory
beneficiaries for the purpose of bringing a wrongful death action.  Tex. Civ. Prac. & Rem. Code Ann. §
71.004 (Vernon 2008).  The purpose of the Wrongful Death Act is to compensate
the decedent’s statutory beneficiaries for their loss of future care,
maintenance, and support.  Russell, 795 S.W.2d at 247.  In a wrongful
death action, a minor child is entitled to recover as damages such sums as the
child’s deceased parent would have reasonably contributed to the child’s
maintenance and support.  Murray v. Templeton, 576 S.W.2d 138, 141 (Tex.
Civ. App.—  Texarkana 1978, no writ).  For the wrongful death of an adult
child, the parent of the child may recover as damages the amount that the child
would have probably contributed to the parent’s support had the child lived.  Mo.-Kan.-Tex.
Ry. Co. v. Pierce, 519 S.W.2d 157, 159 (Tex. Civ. App.—Austin 1975, writ
ref’d n.r.e.).  Wrongful death statutory beneficiaries are entitled to recover
damages for loss of companionship and mental anguish.  Estate of Clifton v.
S. Pac. Transp. Co., 709 S.W.2d 636, 639 (Tex. 1986); see also Comm.
On Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges: 
General Negligence & Intentional Personal Torts PJC 9.3 (2008) (Submitting
wrongful death damages question for the statutory beneficiary’s pecuniary loss,
loss of companionship and society, mental anguish, and loss of inheritance).

            On
behalf of the minor plaintiffs, Hollingshead sought to recover wrongful death
damages for the minor plaintiffs’ mental anguish, pecuniary loss, loss of
companionship and society, loss of consortium, and loss of inheritance.  For
settlement purposes, the monetary value of the minor plaintiffs’ wrongful death
claims would have greatly exceeded the value of the Longs’ wrongful death
claims and the survival claims.  The record conclusively establishes that the
trial court should have allocated most of the settlement proceeds to the minor
plaintiffs’ wrongful death claims.  

            Because
the trial court’s decision to allocate 75% of the settlement proceeds to the
survival claims is not supported by the evidence, we conclude that the trial
court erred in allocating the proceeds.  As a result of allocating over
$3,000,000 to the survival claims, the trial court ultimately concluded that
MHMR was entitled to a payment holiday of $244,382.97.  This amount likely will
not be adequate to cover all future benefits.  Based on this circumstance, the
erroneous allocation of the settlement proceeds effectively circumvented MHMR’s
right of subrogation.  MHMR’s first appellate issue is sustained, and the issue
of the allocation of settlement proceeds is remanded to the trial court for determination
consistent with this opinion.

            As
stated above, the trial court concluded that MHMR had no interest in the
settlement proceeds that were allocated to George because summary judgment had
been granted to him on MHMR’s claims.  When the trial court allocates the
settlement proceeds on remand, MHMR should receive an advance against future
benefits that is adequate to cover all future benefits.  The trial court should
include the proceeds allocated to George in calculating MHMR’s payment
holiday.  Section 417.002(a) of the Workers’ Compensation Act provides that “[t]he
net amount recovered by a claimant in a third-party action shall be used to
reimburse the insurance carrier for benefits.”  Settlement proceeds received
from George constitute part of the “net amount” recovered by the minor
plaintiffs.  Based on the clear language of Section 417.002(a), the “net
amount” recovered by the minor plaintiffs from George should be included in calculating
MHMR’s payment holiday.  

Award
of Attorney’s Fees to Plaintiffs’ Attorneys out of MHMR’s Recovery

            The
trial court awarded plaintiffs’ attorneys $19,792.47 in attorney’s fees out of
MHMR’s subrogation recovery of $59,377.40 for payment of past workers’
compensation benefits to the minor plaintiffs.  The $19,792.47 amount
represents one-third of MHMR’s recovery for payment of past benefits.  In its
second issue, MHMR contends that the trial court erred in awarding attorney’s
fees to plaintiffs’ attorneys out of its recovery.

            Section
417.003 of the Act governs the award of attorney’s fees out of an insurance
carrier’s subrogation recovery.  Tex. Lab.
Code Ann. § 417.003 (Vernon 2006).  This statute provides for three
instances in which a claimant’s attorney may recover attorney’s fees based on a
carrier’s subrogation recovery: (1) where the carrier hires an attorney to
represent it but that attorney does not actively represent it [Section
417.003(a)]; (2) where the claimant’s attorney represents both the claimant and
the carrier [Section 417.003(b)]; and (3) where the carrier has an attorney who
actively represents it and participates in obtaining a recovery [Section 417.003(c)]. 
Hartford Accident & Indem. Co. v. Buckland, 882 S.W.2d 440, 446-47
(Tex. App.—Dallas 1994, writ denied); Brandon v. Am. Sterilizer Co., 880
S.W.2d 488, 496 (Tex. App.—Austin 1994, no writ).

            Donovan
was hired to represent MHMR in this cause.  Therefore, Section 417.003(b) does
not apply.  Section 417.003(a) applies when the carrier’s attorney does not
actively represent its interest.  Section 417.003(a) provides that, if no
agreement exists between the claimant’s attorney and the carrier as to the
amount of attorney’s fees to be paid to the claimant’s attorney, the trial
court shall award attorney’s fees and a proportionate share of expenses to the
claimant’s attorney payable out of the carrier’s subrogation recovery.  The
amount of attorney’s fees awarded may not exceed one-third of the carrier’s
recovery.  See Section 417.003(a)(1).

            The
trial court found that MHMR’s attorney did not actively represent its interest
in obtaining a recovery from the defendants.  An attorney “actively represents”
and “actively participates in obtaining a recovery” when the attorney takes
steps, adequate when measured by the difficulty of the case, toward prosecuting
the claim.  Buckland, 882 S.W.2d at 447.  In determining whether an
attorney actively represented the carrier’s interest, the controlling factor is
not who aided in the claimant’s recovery but, rather, who aided in the
carrier’s recovery.  Brandon, 880 S.W.2d at 496.

            In
this cause, Donovan filed a plea in intervention and two amended pleas in
intervention on behalf of MHMR.  Donovan attended two rounds of depositions and
mediation.  On behalf of MHMR, he entered into stipulations with Elliott as to
the amount of benefits that MHMR had paid to the minor plaintiffs and MHMR’s
subrogation rights.  The Longs’ counsel asserted that the trial court’s summary
judgments in favor of Rosales, Intermodal, and George against MHMR disposed of
MHMR’s subrogation claim and, therefore, precluded any recovery by MHMR from
the settlement proceeds in this cause.  Donovan filed a motion for order nunc
pro tunc seeking clarification of the trial court’s rulings on Rosales and
Intermodal’s motion for summary judgment.  At the hearing on the motion, the
Longs’ counsel urged that the summary judgments extinguished all of MHMR’s
claims.  The trial court entered an order granting MHMR’s motion for order nunc
pro tunc.  The order clarified that the trial court had not granted summary
judgment to Rosales and Intermodal on MHMR’s reimbursement claim under the Act
for workers’ compensation benefits that had been paid to Stacey’s children.  Donovan
clearly took steps to protect MHMR’s subrogation rights and aided in its
recovery.  We conclude that Donovan actively represented MHMR’s interest and
actively participated in obtaining its recovery.  Therefore, Section 417.003(a)
does not apply.       

            Section
417.003(c) provides that, “[i]f an attorney actively representing the insurance
carrier’s interest actively participates in obtaining a recovery, the court
shall award and apportion between the claimant’s and the insurance carrier’s
attorneys a fee payable out of the insurance carrier’s subrogation recovery.” 
In apportioning the attorney’s fees award, “the court shall consider the
benefit accruing to the insurance carrier as a result of each attorney’s
service.”  Section 417.003(c).  The total amount of attorney’s fees awarded by
the trial court under Section 417.003(c) may not exceed one-third of the
carrier’s recovery.

            In
its final judgment, the trial court awarded one-third of MHMR’s recovery to the
“[p]laintiffs’ attorneys.”  The trial court did not specifically name the “[p]laintiffs’
attorneys” to whom it had awarded fees.  The plaintiffs’ attorneys, with the
exception of Elliott, opposed MHMR’s recovery on its subrogation claim.  When
the trial court entered its final judgment, Elliott no longer represented
Hollingshead as next friend of the minor plaintiffs.  Therefore, the trial
court apparently awarded one-third of MHMR’s recovery as fees to attorneys who
opposed any recovery on MHMR’s part, while awarding no attorney’s fees to
MHMR’s attorney.  We conclude that the trial court abused its discretion by
awarding one-third of MHMR’s recovery to attorneys who opposed that recovery.  We
sustain MHMR’s second issue.  On remand, the trial court may fully reconsider
the attorney’s fee issue under Section 417.003(c).

Forfeiture
of Elliott’s Attorney’s Fees

            The
trial court found that Elliott breached the fiduciary duties that he owed to
the minor plaintiffs and that, therefore, good cause existed to require the
forfeiture of $100,000 of his attorney’s fees to them.  Elliott contends in his
first issue that the trial court denied him due process of law in ordering that
$100,000 of his attorney’s fees be forfeited.  A deprivation of personal
property without due process violates the United States and Texas
Constitutions.  Tex. Workers’ Comp. Comm’n v. Patient Advocates of Tex.,
136 S.W.3d 643, 658 (Tex. 2004); Tex. Integrated Conveyor Sys., Inc. v.
Innovative Conveyor Concepts, Inc., 300 S.W.3d 348, 363 (Tex. App.—Dallas
2009, pet. denied).  At a minimum, due process requires notice and an
opportunity to be heard at a meaningful time and in a meaningful manner.  Patient
Advocates, 136 S.W.3d at 658; Tex. Integrated, 300 S.W.3d at 363; Derbigny
v. Bank One, 809 S.W.2d 292, 295 (Tex. App.—Houston [14th Dist.] 1991, no
writ).

            A
lawyer who has engaged in a clear and serious breach of a duty to a client may
be required to forfeit some or all of his or her legal fees in the matter.  Akin,
Gump, Strauss, Hauer & Feld, L.L.P. v. Nat’l Dev. & Research Corp.,
299 S.W.3d 106, 121 (Tex. 2009); Burrow v. Arce, 997 S.W.2d 229, 241-42
(Tex. 1999).  However, in this cause, Hollingshead did not seek any relief from
Elliott.  Hollingshead neither sued Elliott nor alleged a fee forfeiture claim
against him in any pleading.  Therefore, the trial court granted relief to the
minor plaintiffs that was not requested in any pleading.

            The
primary purpose of pleadings is to give an adversary party notice of one’s
claims and defenses, as well as notice of the relief sought.  Perez v.
Briercroft Serv. Corp., 809 S.W.2d 216, 218 (Tex. 1991); Herrington v.
Sandcastle Condo. Ass’n, 222 S.W.3d 99, 102 (Tex. App.— Houston [14th
Dist.] 2006, no pet.).  A trial court cannot grant relief to a party in the
absence of pleadings supporting that relief, unless the issue has been tried by
consent.  Cunningham v. Parkdale Bank, 660 S.W.2d 810, 813 (Tex. 1983); Marrs
& Smith P’ship v. D.K. Boyd Oil & Gas Co., 223 S.W.3d 1, 18 (Tex.
App.—El Paso 2005, pet. denied); Binder v. Joe, 193 S.W.3d 29, 32 (Tex.
App.—Houston [1st Dist.] 2006, no pet.).  The rule of trial by consent is
limited to those exceptional cases where the parties clearly tried an unpleaded
issue by consent. Marrs, 223 S.W.3d at 18; In re Walters, 39
S.W.3d 280, 289 (Tex. App.—Texarkana 2001, no pet.); Stephanz v. Laird,
846 S.W.2d 895, 901 (Tex. App.—Houston [1st Dist.] 1993, writ denied).  The
rule should be applied cautiously, not in doubtful situations, and only where
it appears from the record that the issue was actually tried, although not
pleaded.  In re Walters, 39 S.W.3d at 289.  To determine whether the
issue was tried by consent, the court must examine the record not for evidence
of the issue, but evidence of trial of the issue.  Marrs, 223 S.W.3d at
18; Stephanz, 846 S.W.2d at 901.

            Hollingshead
does not contend that the fee forfeiture issue was tried by consent, and the
record would not support such a contention.  First, there is no evidence in the
record that a trial of the fee forfeiture issue occurred or, for that matter,
that any trial occurred.  This cause was called for a settlement hearing, not a
trial.  See Ledbetter, 251 S.W.3d at 37.  Second, Hollingshead testified
at the settlement hearing that he was satisfied with Elliott’s representation
of him and the minor plaintiffs.  Hollingshead acknowledges in his appellate
brief that “[n]o client of Mr. Elliott sought or pled to have Mr. Elliott’s fee
reduced” and that “no party sought relief from Mr. Elliott.”  This cause is not
one of “those exceptional cases where the parties clearly tried an unpleaded
issue by consent.”  Marrs, 223 S.W.3d at 18.

            Because
the trial court’s judgment granting fee forfeiture is not supported by the
pleadings, it is erroneous.  Cunningham, 660 S.W.2d at 813.  Elliott did
not receive notice of a fee forfeiture claim, and he was denied an opportunity
to be heard on such a claim.  Therefore, we conclude that the trial court
abused its discretion in finding that Elliott breached his fiduciary duties to
the minor plaintiffs and in ordering that $100,000 of his attorney’s fees be
forfeited.  

            Elliott’s
first issue is sustained.  Based on our ruling on his first issue, we need not
address his second issue in which he asserts that the evidence was legally and
factually insufficient to establish that he breached a fiduciary duty to the
minor plaintiffs.  Tex. R. App. P. 47.1.

Award
of Attorney Ad Litem Fees

            The
trial court awarded the attorney ad litem fees in the amount of $40,000.  The
trial court found that “[g]ood cause exists for the apportionment of the
attorney ad litem fees in the amounts of $25,000.00 to be paid pro-rata
by Defendants and $15,000.00 to be paid by Plaintiff’s attorney Richard Elliott
in light of the circumstances of this case and the conduct of the parties and
their counsel.”  Thus, the trial court ordered that “Defendants shall pay to
[the attorney ad litem] the sum of $25,000.00, in addition to the $15,000.00
paid by Richard Elliott as additional attorney ad litem fees, with each
Defendant paying [its] proportionate part of said additional fees.”

            Elliott
contends in his third issue that the evidence was legally and factually
insufficient to support the trial court’s award and division of attorney ad
litem fees.  The trial court’s award of fees to the attorney ad litem
effectively required Elliott to forfeit an additional $15,000 of his attorney’s
fees.  For the reasons stated in our analysis of Elliott’s first issue, we conclude
that the trial court erred in ordering Elliott to pay any part of the attorney
ad litem fees.  We sustain Elliott’s third issue to the extent that the trial
court should not have ordered him to pay attorney ad litem fees.

            Based
on our ruling, Elliott is no longer aggrieved by the trial court’s award of
attorney ad litem fees.  He is not required to pay any of the fees.  Therefore,
it is not necessary for us to address his contention that the evidence was
insufficient to support the total award of $40,000 in attorney ad litem fees.  See
County of El Paso v. Ortega, 847 S.W.2d 436, 441-42 (Tex. App.— El Paso
1993, no writ) (“It is a fundamental principle of appellate review that a party
on appeal may not complain of errors that do not injuriously affect him or that
merely affect the rights of others. . . . The right to appeal rests only in an
aggrieved party to a lawsuit.”).

            We
note that the trial court appointed an attorney ad litem, and not a guardian ad
litem.  Guardian ad litems and attorney ad litems serve different roles.  A
guardian ad litem is not an attorney for the child but is, instead, an officer
appointed by the court to assist in properly protecting the child’s interests. 
Am. Gen. Fire & Cas. Co. v. Vandewater, 907 S.W.2d 491, 493 n.2 (Tex.
1995); see also Tex. R. Civ. P.
173.4.  An attorney ad litem, on the other hand, performs the same services as
any other attorney, such as giving advice, doing research, and conducting
litigation.  City of Houston v. Woods, 138 S.W.3d 574, 582 (Tex. App.—Houston
[14th Dist.] 2004, no pet.).  By rule, guardian ad litem fees may be taxed as
costs of court. Tex. R. Civ. P.
173.6.  However, no rule allows attorney ad litem fees to be taxed as costs of
court.  Woods, 138 S.W.3d at 582.  In a personal injury case, an attorney
ad litem is compensated out of the funds recovered by the plaintiff.  Id.
at 583.

            Thus, in
this cause, the attorney ad litem should be compensated out of the settlement
proceeds received by the minor plaintiffs.  Hollingshead has not challenged the
award of attorney ad litem fees.

This
Court’s Ruling

        The
judgment of the trial court is reversed, and this cause is remanded for further
proceedings consistent with this opinion.

 

 

                                                                                                TERRY
McCALL

                                                                                                JUSTICE

 

October 28, 2010

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.

 









[1]Hollingshead did not assert any claims in his
individual capacity, and the trial court did not award him a recovery in that
capacity.  He has filed his appellate brief in the capacities of next friend
and guardian of the person of Kelcey, Klayton, and Kanyon.

 





[2]The Longs have not filed an appellate brief.