# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 15, 2013

No. 12-40750

Lyle W. Cayce
Clerk

CHRISTY CARTY, Individually and as Next Friend for Bryce Carty, Justice
Carty and Maddy Carty, Minors and as Representative of the Estate of
Jimmy Carty Jr, Deceased,

Plaintiff–Appellee,

v.

STATE OFFICE OF RISK MANAGEMENT,

Intervenor Plaintiff–Appellant,

v.

TEXAS DEPARTMENT OF PUBLIC SAFETY,

Defendant.

Appeal from the United States District Court
for the Eastern District of Texas

Before HIGGINBOTHAM, OWEN, and GRAVES, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

This case involves important and determinative questions of Texas law as
to which there is no controlling Texas precedent.  Accordingly, we certify those
unresolved questions to the Supreme Court of Texas.

No. 12-40750

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF TEXAS,
PURSUANT TO ART. 5, § 3-C OF THE TEXAS CONSTITUTION AND
RULE 58 OF THE TEXAS RULES OF APPELLATE PROCEDURE

TO THE SUPREME COURT OF TEXAS AND
THE HONORABLE JUSTICES THEREOF:

## I. Style of the Case

The style of the case is Christy Carty, Individually and as Next Friend for Bryce Carty, Justice Carty and Maddy Carty, Minors and as Representative of the Estate of Jimmy Carty Jr, Deceased, Plaintiff–Appellee, v. State Office of Risk Management, Intervenor Plaintiff–Appellant, v. Texas Department of Public Safety, Defendant, Case No. 12-40750, in the United States Court of Appeals for the Fifth Circuit, on appeal from the judgment of the United States District Court for the Eastern District of Texas, Marshall Division.  Federal jurisdiction over the issues remaining in the case is based on 28 U.S.C. § 1367, which provides, *inter alia*, that a court may exercise supplemental jurisdiction over state-law claims that are so related to a federal claim that they form part of the same case or controversy.

## II. Statement of the Case

Plaintiff–Appellee Christy Carty, individually, as next friend of her three minor children (the Carty Children), and as representative of the estate of her late husband, Jimmy Carty, Jr., (collectively, the Cartys) brought suit against several governmental and private parties following Jimmy Carty's death in a training accident at the Texas Department of Public Safety Training Academy. In pertinent part, the Cartys asserted product liability claims against two private parties: Kim Pacific Martial Arts (Kim Pacific) and Ringside, Inc.

2

No. 12-40750

(Ringside).[1] The Cartys also asserted claims for damages under the Texas survival and wrongful death statutes.

Intervenor Plaintiff–Appellant State Office of Risk Management (SORM), the state agency responsible for paying workers' compensation benefits for state employees, was not originally a party to this suit. Following Jimmy Carty's death, SORM paid benefits to Christy Carty in her individual and representative capacities as well as to the Carty children. Although Christy Carty has remarried and no longer is eligible to receive benefits, the Carty Children will receive benefits in the future. Under Texas law, SORM, as a workers' compensation carrier, has certain rights to be reimbursed for benefits paid and to be relieved from payment of future benefits following a beneficiary's recovery from a third party.

The Cartys settled first with Ringside for $100,000 in April 2007. This settlement was apportioned per the parties' agreement and approved by the district court. Although SORM had not yet intervened in the case, the Cartys and SORM agreed out of court that the Cartys would pay SORM $20,000 of the settlement proceeds in partial satisfaction of SORM's claim for reimbursement of benefits paid.

The Cartys later agreed to settle their claims against Kim Pacific for $800,000. At that time, SORM filed its complaint in intervention and asserted its rights to recoup benefits paid and to be relieved from paying future benefits. In September 2007, the district court held a prove-up hearing to determine whether the settlement should be approved. Following the hearing, the district court approved the settlement and ordered that it be apportioned as follows:

1.    Attorneys' fees and expenses                    $290,316.87

---

[1] The Cartys asserted claims under 42 U.S.C. § 1983 against the governmental defendants. Over the course of the case, those defendants were dismissed from the case based on sovereign immunity or qualified immunity.

No. 12-40750

| | | |
|---|---|---|
| 2. | Reimbursement to SORM for benefits paid, net of SORM's share of attorneys' fees and costs | $78,295.55 |
| 3. | Christy Carty, in her individual capacity and as representative of the estate of Jimmy Carty, Jr. | $351,278.91 |
| 4. | The Carty Children | $80,108.67 |

The district court ordered that SORM be reimbursed for benefits paid in an amount net of SORM's share of attorneys' fees and costs. Section 417.003 of the Texas Labor Code provides that an insurance carrier who does not actively participate in a recovery from a third party may nevertheless assert its reimbursement rights, subject to an offset for reasonable attorneys' fees for recovery of the carrier's interest as well as a proportionate share of expenses. Following this rule, the district court determined that SORM's gross claim for benefits paid should be reduced as follows:

| | |
|---|---|
| Gross claim for benefits paid[2] | $153,306.62 |
| Less amount recovered in Ringside settlement | ($20,000.00) |
| Less attorneys' fees (1/3 of SORM's $153,306.62 recovery) | ($51,102.20) |
| Less a pro rata share of expenses | ($3,908.87) |
| TOTAL: | $78,295.55 |

Finally, in addition to its allocation of the settlement proceeds, the district court determined that SORM was entitled to suspend future benefits payments to the Carty Children until the amount of suspended payments was equal to the amount of the settlement proceeds allocated to the Carty Children, as mandated by section 417.002 of the Texas Labor Code. SORM claims this offset means it

---

[2] This figure includes benefits paid by SORM to the following parties in the following amounts:

| | |
|---|---|
| Medical and funeral benefits for Jimmy Carty, Jr. | $72,385.12 |
| Benefits paid to Christy Carty | $52,444.91 |
| Benefits paid to the Carty Children | $28,476.59. |

No. 12-40750

will still pay out an additional $274,017.76 to $447,368.89 over time to the Carty Children, depending on if and when the Carty Children enroll in college.

### III. Legal Issues Resolved

Before setting forth the questions certified, we resolve the other important issue in this appeal, leaving only the certified questions remaining in the case. SORM argues that the district court erred in awarding attorneys' fees and expenses to the Cartys' attorneys under Texas Labor Code section 417.003 because SORM possesses sovereign immunity.[3] We review whether a state is entitled to sovereign immunity de novo.[4]

Although SORM never invoked sovereign immunity below, it contends that it may raise sovereign immunity from suit for the first time on appeal since immunity from suit implicates a court's subject-matter jurisdiction. While it is true that immunity from suit so affects subject-matter jurisdiction that it can in appropriate circumstances be raised for the first time on appeal,[5] SORM misunderstands the sovereign immunity jurisprudence of both the federal and Texas courts. Since its argument is foreclosed by our precedent, we hold that sovereign immunity poses no bar in this case.

---

[3] The pertinent part of section 417.003 provides as follows:

(a) An insurance carrier whose interest is not actively represented by an attorney in a third-party action shall pay a fee to an attorney representing the claimant in the amount agreed on between the attorney and the insurance carrier. In the absence of an agreement, the court shall award to the attorney payable out of the insurance carrier's recovery:

    (1) a reasonable fee for recovery of the insurance carrier's interest that may not exceed one-third of the insurance carrier's recovery; and

    (2) a proportionate share of expenses.

TEX. LAB. CODE ANN. § 417.003 (West 2006). The Labor Code explicitly includes self-insured governmental entities in the definition of "insurance carrier." *Id.* § 401.011(27)(D).

[4] *Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011) (citing *Siler-Kohdr v. Univ. of Tex. Health Sci. Ctr. San Antonio*, 261 F.3d 542, 550 (5th Cir. 2001)).

[5] *See, e.g.*, *Union Pac. R.R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 339-40 (5th Cir. 2011) (per curiam).

SORM correctly notes that Texas recognizes two separate forms of sovereign immunity: immunity from suit and immunity from liability.[6]  Under Texas law, waiver of one form of immunity does not necessarily operate as a waiver of the other.[7]  SORM's primary position is that it still possesses sovereign immunity from suit based on the sovereign-immunity-waiver rules established by Texas courts.  In support of its argument, SORM cites exclusively Texas case law.

The basic premise of SORM's argument—that, in federal court, state law determines what conduct is sufficient to constitute waiver of immunity from suit—is incorrect.  As both the Supreme Court and this court have recognized, "the question of whether a particular form of state action amounts to waiver [of immunity from suit] is a federal question that should be decided under a federal rule."[8]  Under the relevant federal common law rule, SORM has waived its sovereign immunity from suit.  Recognizing that permitting states "to both invoke federal jurisdiction and claim immunity from federal suit in the same case . . . can generate seriously unfair results," both the Supreme Court and this court have recognized the "voluntary invocation principle."[9]  This principle "finds waiver [of immunity from suit] through invocation of federal court jurisdiction

---

[6] *E.g.*, *Reata Constr. Corp. v. City of Dall.*, 197 S.W.3d 371, 374 (Tex. 2006).

[7] *E.g.*, *id.*

[8] *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 246-47 (5th Cir. 2005) (citing *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 623 (2002)); *see also Lapides*, 535 U.S. at 622-23 (holding, in a case in which the only viable claims were asserted under state law, that federal common law determines whether the state has by its conduct waived its immunity from suit).

[9] *Meyers*, 410 F.3d at 243; *see also Bd. of Regents of Univ. of Wis. Sys. v. Phx. Int'l Software, Inc.*, 653 F.3d 448, 451 (7th Cir. 2011) ("It would be anomalous if, after invoking federal jurisdiction, the state could declare that the federal court has no authority to consider related aspects of the case.").

by an attorney authorized to represent the state in the pertinent litigation."[10] We have explained that this principle "applies generally in all cases for the sake of consistency, in order to prevent and ward off all actual and potential unfairness, whether egregious or seemingly innocuous."[11] For over a century, this principle has been applied to cases like the present one, in which a state intervenes in a case asserting a claim to a fund.[12] Because SORM voluntarily invoked the jurisdiction of the federal courts, it has waived its sovereign immunity from suit.

To the extent SORM's briefing can be construed to assert sovereign immunity from liability, SORM has also waived that form of immunity, albeit

---

[10] *Meyers*, 410 F.3d at 247 (citing *Lapides*, 535 U.S. at 622-24). The attorney must be authorized to represent the state but need not be authorized to waive immunity. *Lapides*, 535 U.S. at 622-23.

[11] *Meyers*, 410 F.3d at 249. To be clear, we do not read this statement to mean that the rule applies without exception to all claims involved in a case in which a state voluntarily invokes the jurisdiction of the federal courts. This court has not had occasion to explore the limitations on the rule in the context of counterclaims, for example. Those circuits that have explored the limitations on the voluntary invocation principle have generally held that the principle means that sovereign immunity is waived as to compulsory counterclaims. *E.g.*, *Phx. Int'l*, 653 F.3d at 469-471 (collecting cases); *Regents of Univ. of N.M. v. Knight*, 321 F.3d 1111, 1125-26 (Fed. Cir. 2003). Even assuming that this circuit adopted that rule, it would not affect the result in this case. The supposed "claim" for attorneys' fees at issue here is not so much a counterclaim as it is simply a component of SORM's claim itself: the statute *requires* a court to offset attorneys' fees and expenses against a carrier's recovery when apportioning fees. *Cf. Gardner v. New Jersey*, 329 U.S. 565, 573-74 (1947) (holding that when a debtor files an objection to a proof of claim filed by a state, "[n]o judgment is sought against the State [because] [t]he whole process of proof, allowance, and distribution is, shortly speaking, an adjudication of interests claimed in a res").

[12] In *Clark v. Barnard*, 108 U.S. 436 (1883), the Supreme Court held as follows:

In the present case the state of Rhode Island appeared in the cause and presented and prosecuted a claim to the fund in controversy, and thereby made itself a party to the litigation to the full extent required for its complete determination. It became an actor as well as a defendant, as by its intervention the proceeding became one in the nature of an interpleader, in which it became necessary to adjudicate the adverse rights of the state and the appellees to the fund, to which both claimed title.

*Clark*, 108 U.S. at 448, *cited with approval in Lapides*, 535 U.S. at 619.

for different reasons. This court has held that the question of waiver of immunity from liability is governed by state law.[13] Under established Texas law, sovereign immunity from liability is treated as an affirmative defense to liability: "it must be pleaded or else it is waived."[14] Because SORM never invoked its immunity from liability below, it has waived that defense.

## IV. Legal Issues Remaining

The remaining issues in the case involve questions on which Texas law is silent. SORM's other challenges each relate to the nature of a workers' compensation carrier's subrogation rights when multiple workers' compensation beneficiaries recover from a third-party tortfeasor. The governing statute, section 417.002 of the Texas Labor Code, provides as follows:

> (a) The net amount recovered by a claimant in a third-party action shall be used to reimburse the insurance carrier for benefits, including medical benefits, that have been paid for the compensable injury.
>
> (b) Any amount recovered that exceeds the amount of the reimbursement required under Subsection (a) shall be treated as an advance against future benefits, including medical benefits, that the claimant is entitled to receive under this subtitle.
>
> (c) If the advance under Subsection (b) is adequate to cover all future benefits, the insurance carrier is not required to resume the payment of benefits. If the advance is insufficient, the insurance carrier shall resume the payment of benefits when the advance is exhausted.[15]

---

[13] *Meyers*, 410 F.3d at 253.

[14] *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) (per curiam) (citing *Davis v. City of San Antonio*, 752 S.W.2d 518, 519-20 (Tex. 1988)); *see also Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003) ("Unlike immunity from suit, immunity from liability does not affect a court's jurisdiction to hear a case and cannot be raised in a plea to the jurisdiction.").

[15] TEX. LAB. CODE ANN. § 417.002 (West 2006).

No. 12-40750

The Supreme Court of Texas has summarized the disbursal scheme mandated by section 417.002 as follows:

- any net recovery up to the amount of past benefits goes to the carrier;

- any recovery greater than past benefits but less than all future benefits goes to the beneficiary, but releases the carrier from future payments to that extent;

- any recovery greater than past and future benefits combined goes to the beneficiary.[16]

Although Texas case law makes clear that the carrier has a first-money right of reimbursement for benefits *paid* out of any recovery by a beneficiary,[17] it does not explain how a recovery in excess of past benefits should be apportioned and treated when multiple beneficiaries together bring claims against a tortfeasor. SORM's remaining arguments involve the latter issue.

## A

As an initial matter, we clarify a point of confusion among the parties and district court. The district court concluded that it was bound by the disbursal scheme outlined in *Performance Insurance Co. v. Frans*,[18] a Houston Court of Appeals decision from 1995, and both parties argued in this court that *Frans* at least partly governs the apportionment of the settlement. *Frans* held that a settlement should be divided and applied in the following sequence: "(1) costs; (2) attorney's fees; (3) reimbursement of the carrier; and finally, (4) the excess, if any, to the beneficiaries."[19] The court also held that the excess should be

---

[16] *Tex. Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 35-36 (Tex. 2008) (footnotes omitted).

[17] *E.g.*, *id.* at 36 ("[U]ntil a carrier is *reimbursed* in full, 'the employee or his representatives have no right to any of such funds.'" (emphasis added) (quoting *Capitol Aggregates, Inc. v. Great Am. Ins. Co.*, 408 S.W.2d 922, 923 (Tex. 1966))).

[18] 902 S.W.2d 582 (Tex. App.—Houston [1st Dist.] 1995, writ denied).

[19] *Frans*, 902 S.W.2d at 585.

apportioned among beneficiaries "in the same ratio as they received death benefits."[20]  The rationale of this holding was simple—the law governing the case, article 8307 of the Texas Civil Statutes, explicitly contained those requirements.[21]

In 1989, however, article 8307 was repealed, and a new, substantively revised statute was enacted in its place.[22]  In 1993, the 1989 act was amended and recodified as part of the enactment of the Texas Labor Code.[23]  Although the sequence mandated by former article 8307 described in *Frans* is similar to that mandated by current law,[24] the requirement that any recovery in excess of the amount required to reimburse the carrier be apportioned in the same ratio as death benefits were received by the beneficiaries was eliminated in the 1989 Act[25] and is nowhere to be found in the current version of the Workers' Compensation Act.[26]  Likewise, we find no Texas case applying the current Act that has imposed the *Frans* apportionment rule.

The district court acknowledged that *Frans* dealt with article 8307, not the current Act, but concluded that *Frans*'s holding remained valid since the 1993 enactment of the Labor Code was intended to be a nonsubstantive recodification of existing labor statutes.  Although the district court's observation regarding

---

[20] *Id.* (internal quotation marks omitted).

[21] *Id.*; *see also* Act of May 17, 1985, 69th Leg., R.S., ch. 326, § 1, sec. 6a(a), *repealed by* Texas Workers' Compensation Act of 1989, 71st Leg., 2d C.S., ch. 1, § 16.01(10).

[22] Texas Workers' Compensation Act of 1989, 71st Leg., 2d C.S., ch. 1, §§ 4.05(f), 16.01(10), *amended by* Act of May 12, 1993, 73d Leg., R.S., ch. 269, § 417.002.

[23] Act of May 12, 1993, 73d Leg., R.S., ch. 269, §§ 1.001, 1.004, 417.002.

[24] *See Tex. Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 35-36 (Tex. 2008).

[25] Texas Workers' Compensation Act of 1989, 71st Leg., 2d C.S., ch. 1, § 4.05(f) (amended 1993).

[26] *See* TEX. LAB. CODE § 417.002 (West 2006).

No. 12-40750

the nonsubstantive nature of the Labor Code's codification was correct,[27] the conclusion it drew was not. The 1993 Labor Code was a nonsubstantive revision of the *1989* act, which had repealed article 8307. In other words, the statute interpreted in *Frans*, article 8307, had been substantively changed prior to the enactment of the Labor Code. Therefore, the district court's holding that it was bound by *Frans*'s settlement-apportionment methodology was erroneous.

## B

*Frans* aside, the current Texas statute does not clarify how a net recovery in excess of the amount of benefits paid by the workers' compensation carrier should be apportioned among beneficiaries when multiple beneficiaries recover from a third-party tortfeasor. The statutory text refers only to a single "claimant." Given this drafting, the intent of the Texas Legislature is unclear in cases in which an employee dies and multiple beneficiaries obtain a third-party recovery.

In the face of this statutory silence and citing Texas case law holding that a settlement may not be apportioned in a way that operates as an end-run around a carrier's rights,[28] SORM first contends that a court must apportion a recovery in excess of past benefits in the manner that maximizes a carrier's ability to treat the recovery as an advance of future benefits. In other words, no matter the relative value of the parties' claims, a court must allocate settlement

---

[27] Act of May 12, 1993, 73d Leg., R.S., ch. 269, § 1.001(a).

[28] *See Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 203 (5th Cir. 2006) (stating, while discussing a carrier's right to reimbursement, that "[a] trial court cannot arbitrarily compromise this right by structuring the settlement 'so that a non-beneficiary recovers, but a beneficiary does not'")); *Elliott v. Hollingshead*, 327 S.W.3d 824, 835 (Tex. App.—Eastland 2010, no pet.); *Performance Ins. Co. v. Frans*, 902 S.W.2d 582, 585 (Tex. App.—Houston [1st Dist.] 1995, writ denied); *Am. Gen. Fire & Cas. Co. v. McDonald*, 796 S.W.2d 201, 204 (Tex. App.—San Antonio 1990, writ denied) ("By structuring the award so as to deny a 'recovery' by the minor child and awarding the entire recovery to the mother burdened by an agreement to set aside $25,000.00 for the child, the trial court has effectively given the child a double recovery and denied the carrier reimbursement rights.").

11

No. 12-40750

proceeds to the beneficiaries in proportion to the amount of future workers' compensation benefits each beneficiary is entitled to receive. The principal alternative position is that a court should make an allocation that reflects the relative merit and value of each beneficiary's claim. Colorable arguments exist for each position.

On the one hand, SORM's approach arguably accords with the Texas rule regarding reimbursement of already-paid benefits. As noted above, in the context of *reimbursement*, the carrier has a first-money right—a right that Texas courts have held "must *not* be compromised."[29] One might conclude this principle should be carried over to the context of future advances and mandate the apportionment scheme for which SORM argues. A single Texas decision, *Elliott v. Hollingshead*[30] from the Eastland Court of Appeals, offers some support for this approach. In that case, after reviewing the evidence of damages to each party and holding that the trial court's allocation of settlement proceeds was "not supported by the evidence," the court remanded with instructions that "[w]hen the trial court allocates the settlement proceeds . . . , [the carrier] should receive an advance against future benefits that is adequate to cover all future benefits."[31] Since the court observed that the allocation on remand should permit the carrier to treat the recovery as a full advance of future benefits, *Elliott* arguably adopted a rule like that proposed by SORM. With that said, whether the *Elliott* court intended to do so is less clear. If the overriding concern

---

[29] *Hodges*, 474 F.3d at 203 (alteration in original) (quoting *U.S. Fire Ins. Co. v. Hernandez*, 918 S.W.2d 576, 578 (Tex. App.—Corpus Christi 1996, writ denied)) (internal quotation marks omitted); *accord Tex. Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 36 (Tex. 2008) ("Thus, until a carrier is *reimbursed* in full, 'the employee or his representatives have no right to any of such funds.'" (emphasis added) (quoting *Capitol Aggregates, Inc. v. Great Am. Ins. Co.*, 408 S.W.2d 922, 923 (Tex. 1966))).

[30] 327 S.W.3d 824.

[31] *Elliott*, 327 S.W.3d at 834-35.

were protecting the rights of the carrier to an advance, then the court's review of the evidence would have been superfluous. The *Elliott* court's statement may have been merely descriptive of what should happen on remand given the relative value of each party's claim.

On the other hand, SORM's approach—favoring the carrier above all else in the context of future advances—may go too far. First, SORM's approach divorces settlement apportionment from the value of a party's legal claim,[32] which arguably is at odds with the animating principle of section 417.002. Texas courts have explained that the underlying logic of the statute is that a beneficiary should not be allowed a double recovery—once from the tortfeasor, and also from the workers' compensation carrier.[33] SORM's approach, however, seemingly guarantees that in a multiple beneficiary situation in which each beneficiary's claim has a different value, certain beneficiaries will be made less than whole while others receive more than they are otherwise entitled.[34]

Second, SORM's approach differs from the apportionment rule applied when both a nonbeneficiary and a beneficiary enter into a settlement. Since a carrier's rights are limited to "that portion of an award or settlement which represents . . . a workers' compensation beneficiary['s interest]," a settlement

---

[32] To illustrate this problem, suppose there are two parties, *X* and *Y*, both of whom are beneficiaries under a plan. Suppose that in the future, the carrier will pay out $250,000 in benefits to *X* and $250,000 in benefits to *Y*. Further suppose that *X* and *Y* bring suit against a third-party tortfeasor, that *X*'s claim is worth $100,000, and that *Y*'s claim is worth $500,000. Finally, suppose that *X* and *Y* settle their claims for their full value for a total settlement value of $600,000. Under SORM's view, a court would have to apportion the settlement such that $250,000 goes to *X* (whose claim was worth only $100,000) and $350,000 goes to *Y* (whose claim was worth $500,000), since any other apportionment would impinge upon SORM's right to treat the recovery as an advance of future benefits.

[33] *See, e.g.*, *Ledbetter*, 251 S.W.3d at 35.

[34] In the hypothetical in note 32, for example, *Y* had a claim worth $500,000 but under SORM's rule would be apportioned only $350,000 of the settlement proceeds. *X*, by contrast, had a claim worth $100,000 but under SORM's rule would be apportioned $250,000 of the settlement proceeds.

that involves both a nonbeneficiary and a beneficiary must first be apportioned to each before the extent of the carrier's rights under section 417.002 can be determined.[35] In that circumstance, apportionment is not guided by a maximize-carrier-recovery principle. Instead, this court as well as Texas courts of appeals have held that "[t]he proper division of a settlement between beneficiaries and non-beneficiaries presents an issue for the trier of fact based on the relative merits and worth of the claims involved."[36] These courts have explained that this rule ensures that a trial court cannot "*arbitrarily* compromise" the carrier's rights when apportioning the settlement between beneficiaries and nonbeneficiaries.[37]

Third, SORM's approach is in tension with a thread of Texas case law regarding interpretation of the Workers' Compensation Act. The Supreme Court of Texas has explained that the Act should be liberally construed in favor of the injured worker and that "it would be injudicious to construe the statute in a manner that supplies by implication restrictions on an employee's rights that are not found in . . . [the] plain language."[38] A reading of section 417.002 that favors above all else insurance carriers, insofar as that reading is not mandated by the plain text of the statute, seems to conflict with these policy statements.

---

[35] *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 203 (5th Cir. 2006) (alterations in original) (quoting *U.S. Fire Ins. Co. v. Hernandez*, 918 S.W.2d 576, 579 (Tex. App.—Corpus Christi 1996, writ denied)) (internal quotation marks omitted).

[36] *Id.* at 202 (quoting *Hernandez*, 918 S.W.2d at 579) (internal quotation marks omitted); *see also Elliott*, 327 S.W.3d at 833; *Tex. Workers' Comp. Ins. Fund v. Serrano*, 985 S.W.2d 208, 210 (Tex. App.—Corpus Christi 1999, pet. denied).

[37] *Hodges*, 474 F.3d at 203-04 (emphasis added).

[38] *In re Poly-Am., L.P.*, 262 S.W.3d 337, 350 (Tex. 2008) (quoting *Kroger Co. v. Keng*, 23 S.W.3d 347, 349 (Tex. 2000)) (alterations in original); *see also Huffman v. S. Underwriters*, 128 S.W.2d 4, 6 (Tex. 1939) ("Compensation laws are liberally construed in favor of the employee, as well as in favor of a claimant or beneficiary.").

No. 12-40750

We find no case of the Supreme Court of Texas that has resolved how a settlement should be apportioned among multiple beneficiaries. This question is best resolved by the Supreme Court of Texas rather than this court.

## C

SORM also argues in the alternative that, regardless of the apportionment among the beneficiaries, Texas law requires a court to consider the beneficiaries' collective recovery when calculating a carrier's holiday from payments. Subsections (b) and (c) of section 417.002 provide that "[a]ny amount recovered that exceeds the amount of the reimbursement required [to be paid to the carrier] shall be treated as an advance against future benefits, including medical benefits, that the claimant is entitled to receive," and that the carrier need not resume the payment of benefits until that advance is exhausted.[39] The district court held, and the preceding discussion assumes, that one must proceed on a beneficiary-by-beneficiary basis when calculating the carrier's payment holiday; in other words, one must compare each particular beneficiary's recovery to the amount of future benefits that beneficiary is entitled to receive to determine the carrier's payment holiday.

SORM challenges this premise, contending that it should have recourse to the collective recovery of Christy Carty and the Carty Children for the purposes of its right to treat the recovery as an advance of future benefits. SORM's view is that so long as all of the parties in the suit were or are beneficiaries under the plan, the carrier has recourse to the total recovery among those parties, even if the entirety of the insurer's future benefit payments will go to a party whose legal claim was worth less than the others.

As noted earlier, section 417.002 does not explicitly contemplate the situation in which multiple beneficiaries obtain a recovery against a third-party

---

[39] TEX. LAB. CODE ANN. § 417.002(b)-(c) (West 2006).

15

tortfeasor, and Texas case law has not explained how section 417.002(b)-(c) operates in a multiple-beneficiary situation.    Here too we see colorable arguments for both sides.

On the one hand, determining the extent of the carrier's payment holiday by reference to the collective recovery of the beneficiaries seemingly accords with Texas's first-money reimbursement rule.    Under section 417.002(a), the carrier is reimbursed from the collective recovery of the beneficiaries *before* any allocation is made among the beneficiaries; indeed, the Supreme Court of Texas has held that "until a carrier is reimbursed in full, 'the employee or his representatives have no right to any of such funds.'"[40]    Permitting the carrier to consider the collective recovery of the beneficiaries for the purposes of its payment holiday arguably is consistent with this approach.

On the other hand, the Texas Legislature has made the decision to give the beneficiary rights in the recovery in excess of the amount required to reimburse the carrier.    In light of that policy choice, it arguably is difficult to remain true to the animating principle of the subrogation rule—to prevent double recovery on the part of the employee—without looking to the particular beneficiary's rights in the recovery.    Insofar as the beneficiaries have claims with different values and will receive benefits over a different time horizon, SORM's approach would permit the carrier to receive a greater payment holiday from payments as to certain beneficiaries than is justified by the principle underlying the payment-holiday rule—that a beneficiary should not receive a double recovery.

SORM's approach has more force to the extent that one concludes that the first money received by a beneficiary from a third party *necessarily* duplicates

---

[40] *Tex. Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 36 (Tex. 2008); *see also* TEX. LAB. CODE ANN. § 417.002(a) (West 2006).

the amount of workers' compensation benefits that inure to that beneficiary.[41] In a case like the present one, in which the employee is deceased, the benefit received by the beneficiary is some percentage of the employee's average weekly wage.[42] Although, under Texas law, the damages recovered in a wrongful death action *may* include the lost wages and therefore may duplicate the workers' compensation benefit,[43] we find no Supreme Court of Texas decision holding that a damage award necessarily includes lost wages, much less that the first money of a damage award is for lost wages.

Like SORM's first argument, we believe the issue is best resolved by the Supreme Court of Texas.

## D

SORM finally argues that, assuming that one proceeds on a beneficiary-by-beneficiary basis to determine the duration of a carrier's payment holiday, "[i]f there is evidence that the party receiving the settlement funds intends to use the funds to the benefit of a workers' compensation beneficiary, then the apportionment is one that deprives the workers compensation carrier of its right to take an advance against future benefits" and is invalid. SORM asserts that such evidence exists in this case, pointing to Christy Carty's testimony at the

---

[41] We note that this premise is quite similar to that advanced by SORM in its first argument—that any allocation must maximize the carrier's payment holiday.

[42] TEX. LAB. CODE ANN. §§ 408.181(b), 408.182.

[43] *See Moore v. Lillebo*, 722 S.W.2d 683, 687-88 (Tex. 1986) (defining the elements of damage allowed in wrongful death cases as pecuniary loss, loss of inheritance, mental anguish, and loss of society and companionship).

## No. 12-40750

settlement hearing that she would use the settlement to support her children.[44] We find no dispositive case law from the Supreme Court of Texas on this issue.

On the one hand, Texas courts of appeals as well as this court have held that the intent of the parties is irrelevant in assessing the propriety of an apportionment.[45]   The controlling factor instead is the effect of the apportionment.[46] Accordingly, one might conclude that Christy Carty's general statements of intent should not affect the analysis of whether the apportionment operates as an end run around SORM's rights.

On the other hand, the San Antonio Court of Appeals held, in *American General Fire & Casualty Co. v. McDonald*,[47] that an allocation of the settlement fund to the mother of a beneficiary for "safekeeping," with no recovery going directly to the beneficiary, was improper.  *McDonald* involved a settlement

---

[44] Christy Carty testified as follows:

Q.  And is it your intent, then, to use the monthly benefits that would be paid initially plus the up-front cash lump sum to continue with your responsibilities for the care and maintenance and well-being of these three children?

A.  Yes, it is.

[ . . . ]

Q.  And you—and the funds that are paid to you at this point in time will be used for [the Carty Children's] care and well-being while you're responsible for them and for them to be able to use their portion of the settlement once they reach 18 and thereafter to go to school?

A.  Yes.

[ . . . ]

Q.  And the reason that you are wanting 650,000 [sic] to be apportioned to you is so you can use that money for the care, maintenance, and well-being of your children?

A.  Yes.

[45] *E.g.*, *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 203 (5th Cir. 2006) (citing *U.S. Fire Ins. Co. v. Hernandez*, 918 S.W.2d 576, 579 (Tex. App.—Corpus Christi 1996, writ denied)).

[46] *E.g.*, *id.*

[47] 796 S.W.2d 201 (Tex. App.—San Antonio 1990, writ denied).

among a third party and the surviving parents, spouse, and child of the deceased employee.[48] The trial court allocated the proceeds of the settlement to the parents and spouse of the employee; the child directly received nothing.[49] Following the terms of the settlement agreement, however, the court ordered that the spouse be bound by a "safekeeping agreement," under which she set aside $25,000 of her recovery to be paid to the child upon his attaining the age of eighteen.[50] The court held that this apportionment was invalid under article 8307, the governing law at the time, since it permitted the child to both continue receiving benefits and receive a full recovery from the third party.[51]

Whether *McDonald* supports SORM's argument based on the facts of this case is not clear. In reaching its conclusion, the *McDonald* court emphasized how the agreement was not merely a voluntary agreement but instead was mandated by the trial court's order.[52] Here, by contrast, Christy Carty is not bound by any agreement; we have only her general statements that she intended to use the amount allocated to her to benefit her children.

We respectfully submit that this issue should be decided by the Supreme Court of Texas as well.

---

[48] *McDonald*, 796 S.W.2d at 202.

[49] *Id.*

[50] *Id.* at 202-03.

[51] *Id.* at 204-05.

[52] *Id.* ("A recovery is the 'restoration or vindication of a right existing in a person, by formal judgment or decree of a competent court . . . .' The child has 'recovered' for the purposes of the Act." (citation omitted) (quoting *City of Garland v. Huston*, 702 S.W.2d 697, 700 (Tex. App.—Dallas 1985, writ ref'd n.r.e.))).

No. 12-40750

## V. Questions Certified

We hereby certify the following questions of law to the Supreme Court of Texas:

1. In a case involving a recovery by multiple beneficiaries, how should the excess net settlement proceeds above the amount required to reimburse a workers' compensation carrier for benefits paid be apportioned among the beneficiaries under section 417.002 of the Texas Labor Code?

2. How should a workers' compensation carrier's right under section 417.002 to treat a recovery as an advance of future benefits be calculated in a case involving multiple beneficiaries? Should the carrier's right be determined on a beneficiary-by-beneficiary basis or on a collective-recovery basis?

3. If the carrier's right to treat a recovery as an advance of future benefits should be determined on a beneficiary-by-beneficiary basis, does a beneficiary's nonbinding statement that she will use her recovery to benefit another beneficiary make the settlement allocation invalid?

We disclaim any intention or desire that the Supreme Court of Texas confine its reply to the precise form or scope of the questions certified.